**UNITED STATES of America,**
**Libelant,**

v.

**363 CASES, MORE OR LESS, "MOUNTAIN VALLEY MINERAL WATER",
each containing 6 one-half gallon bottles, and 81 five-gallon carboys, more or less, of an article of food and drug, et al., Mountain Valley Sales Company, a corporation; John G. Scott, H. B. McFarling, Claimants.**

**Civ. A. No. 565.**

United States District Court
W. D. Arkansas, Hot Springs Division.

Aug. 1, 1956.

---

Paul Steffy, Food & Drug Div., Dept. of Health, Education & Welfare, Washington, D. C., Charles W. Atkinson, U. S. Atty., Henry M. Britt, Asst. U. S. Atty., Ft. Smith, Ark., for plaintiff.

Wright, Harrison, Lindsey & Upton, Little Rock, Ark., Wootton, Land & Matthews, Hot Springs, Ark., Robert F. Schlafly, St. Louis, Mo., J. F. Schlafly, Jr., Alton, Ill., for defendant.

JOHN E. MILLER, District Judge.

The motion of libelant for judgment "in accordance with the motion for directed verdict" is before the court for consideration and disposition. The trial of this case to a jury began on May 21 and was concluded on June 2, 1956, when the jury returned into open court the following verdict:

"We, the jury, find the issues in this case in favor of the claimant defendants, Mountain Valley Sales Company, John G. Scott, and H. B. McFarling, and against the libelant plaintiff, United States of America."

Judgment was entered in accordance with the verdict.

On May 31, 1956, at the conclusion of the evidence in chief adduced by claimants, the libelant filed its written motion for a directed verdict which, omitting the formal parts, is as follows:

"The uncontroverted evidence in this case shows that Mountain Valley Mineral Water is recommended and suggested for use as a food for special dietary uses because of its mineral content. The labels on both sizes of bottles seized failed to bear the information required by 21 U.S. C. § 343(j) and 21 C.F.R. 125.4. For this reason the mineral water is, as a matter of law, misbranded within the meaning of 21 U.S.C. § 343 (j) and should be condemned pursuant to 21 U.S.C. § 334(a) and (b)."

Upon the presentation of the written motion, the following occurred:

The Court: "Now, this motion of the plaintiff, or libelant, for a directed verdict on the question of the

alleged misbranding of the water as appearing in the exhibits, the bottles introduced here, raises this question. Water may be considered a food under the statute when used for dietary uses. Now, if the court were satisfied that this water was recommended for special dietary uses, then I think the motion probably should be granted, but I am not certain at all on that. I find here in the Government's request * * * and the reason I am referring to this is the fact that this request, as made, is not a waiver of the motion. I am referring to it for this reason. Your special requested instruction No. 8 deals with the subject and outlines the statute which requires certain information to be upon the label of a product that is used for dietary purposes or a food. I think that is a question which the court must submit to the jury. Likewise, the claimants have requested an instruction, No. D, covering the same subject as the request of the Government, special request No. 8. * * * I am inclined to think that this is a jury question. I think the jury should be told if they find that it was recommended for special dietary purposes, then as a matter of law the label on the bottle is not sufficient, and the water is subject to condemnation. I think that is the law.

Mr. Robert Schlafly: "Your Honor, may I state one other reason why we think the motion ought to be denied. That is, any particular pamphlet or as to four of the pamphlets there is an issue as to the fact whether it is labeling. Even if a particular pamphlet may be found to represent the water as a food for special dietary use, the jury might find that pamphlet was not labeling."

Mr. Steffy: "Your Honor, on that point, of course, the representation and suggestions that a food is for special uses need not appear on the label. It is a question of what is represented to the public whether it is labeling or advertising or what you have. If those representations are made, be it in the labeling or anywhere else, in that case these particular points of information must appear on the label."

The Court: "I am not certain by any means that the representation for dietary use is made, so I am going to submit the question, among other questions, to the jury. What I am trying to do is to take claimants' special instruction D and plaintiff's special instruction 8 and take the meat out of both of them and consolidate them on that particular question. And, therefore, I am going to overrule your motion and let your exceptions be saved."

Mr. Steffy: "In addition to the motion which was typed out, we didn't have time to type out a motion for directed verdict on the ground that the water is misbranded as a drug because its label is false and misleading, because of the charge that it will aid or assist tetany due to deficiency in the parathyroid gland. Both the evidence of the claimants and Government establishes that fact. When you recall that Dr. Killian was testifying to the long list of things that the water would do, that is the one thing to which he said 'No' instead of 'Yes'."

The Court: "The additional motion for directed verdict will be overruled and exceptions saved."

Following the overruling of the written motion for directed verdict and the oral motion, the libelant proceeded to introduce its rebuttal testimony and called Dr. John Paul Frawley and Dr. Oliver C. Melson. Upon the conclusion of the rebuttal testimony adduced by the libelant, the defendant introduced John Eibert as a witness in surrebuttal.

The libelant did not renew either of its motions for directed verdict at the conclusion of all the testimony.

At the conclusion of all the testimony and in the absence of the jury, the greater portion of the afternoon was consumed in discussing with counsel the various requests and the action that the court proposed to take in reference to the requests, and also in reviewing for the benefit of counsel the instructions that the court proposed to give to the jury. After the argument by counsel and before the jury retired to consider its verdict, the court in chambers and in the absence of the jury stated to counsel:

The Court: "Now, gentlemen, you have heard the instructions read to the jury as given by the court, and now in the absence of the jury counsel for the libelant may dictate such specific objections as you may have to the instructions as given by the court."

Mr. Steffy: "The libelant has no objections except for the failure to direct a verdict upon the charge that the water is misbranded because it fails to bear statements required by Section 343(j) of the Federal Food, Drug, and Cosmetic Act, since it is represented as a food for special dietary uses because of its mineral content, and also because the water was misbranded, by the testimony of both sides, in regard to the charge that representations were made that it was effective in tetany due to chronic diarrhea and disturbances of the parathyroid glands."

The Court: "All right. Objection overruled. Is that all, Mr. Steffy?"

Mr. Steffy: "Yes, sir."

Following the return of the verdict and entry of judgment thereon and on the same date, the libelant filed the motion now before the court. Omitting the formal parts of the motion, it is as follows:

"(1) The uncontroverted evidence in this case shows that Mountain Valley mineral water is recommended and suggested for use as a food for special dietary uses because of its mineral content. The labels on both sizes of bottles seized failed to bear the information required by 21 U.S.C. § 343(j) and 21 C.R.F. 125.4. For this reason the mineral water is as a matter of law misbranded within the meaning of 21 U.S.C. § 343(j) and should be condemned pursuant to 21 U.S.C. § 334 (a) and (b).

"(2) For further grounds, libelant urges that all of the evidence in the case with respect to the charge that the article is falsely represented as effective treatment for tetany due to disturbances of the parathyroid glands, including that adduced by the claimants, is to the effect that statements and representations are made for such condition, and the water will not provide the promised benefits."

The libelant on its brief states:

"In connection with the charge in the libel that the water was misbranded within the meaning of 21 U.S.C. § 343(j) in that it purports to be and is represented as a food for special dietary uses because of its mineral content and its labeling fails to bear information required by the regulations, the only question presented for the consideration of the jury was whether the water purported to be and was represented as a food for special dietary uses by reason of its mineral content.

"It is the Government's contention that the evidence in this case concerning this issue was uncontroverted, and that the jury's verdict, finding that the water was not represented as a food for special dietary use by reason of its mineral content, is contrary to the uncontroverted evidence, and for that reason should be set aside and judgment entered for the United States of America.

"In connection with the charge that the water was misbranded within the meaning of 21 U.S.C. § 352 (a) because of representations in the labeling concerning tetany due to chronic diarrhea or disturbances of

parathyroid gland, we also contend that the evidence was uncontroverted, that the jury's verdict is contrary to such evidence, should therefore, be set aside, and judgment entered on behalf of the United States of America."

The claimants on their brief state:

"The Government's motion asks, in effect, for a judgment notwithstanding the verdict on two grounds, violation of Section 343(j) and of Section 352(a). The motion should be denied because

"(1) The charge as to Section 352(a) is not properly before the Court on this motion. It relates to the 'tetany claim' and requires a preliminary finding that the pamphlet 'Your Health Begins with Nature' was labeling. The Government did not ask for a directed verdict on the question whether 'Your Health' pamphlet was labeling and cannot do so now.

"(2) There were substantial issues of fact as to the alleged violations of Section 343(j) and Section 352(a) which preclude a judgment notwithstanding the verdict.

"(3) The regulation relied on by the Government in its Section 343(j) charge is invalid if interpreted in accordance with libelant's argument."

Under Rule 50(a), Federal Rules of Civil Procedure, 28 U.S.C.A., a motion for a directed verdict shall state the specific grounds therefor.

If the motion for a directed verdict is not granted, then the party making such motion may within ten days after the jury has been discharged "move for judgment in accordance with his motion for a directed verdict." Rule 50(b), F.R. C.P.

■■ A motion for a directed verdict must be made at the close of all the evidence, and if made at the close of all the evidence it constitutes a basis for the motion for judgment notwithstanding the verdict, and such motion must be "in

accordance with" the motion for a directed verdict. See, Mutual Benefit Health & Accident Ass'n v. Thomas, 8 Cir., 123 F.2d 353, 355; Boston Ins. Co. v. Fisher, 8 Cir., 185 F.2d 977, 978–979; 5 Moore's Federal Practice, 2nd Ed., Sec. 50.08, pp. 2328–2329. The better practice requires that the motion for a directed verdict be in writing. However, an oral statement of the grounds for a motion for a directed verdict is sufficient compliance with the rules requiring motions to state the grounds therefor. 5 Moore's Federal Practice, 2nd Ed., Sec. 50.04, p. 2322.

The court in Virginia-Carolina Tie & Wood Co., Inc., v. Dunbar, 4 Cir., 106 F.2d 383, at page 385, in speaking of the necessity that a motion for a directed verdict shall state the specific grounds therefor, said:

"And we think it important that this requirement of the rule be observed, particularly in view of the enlarged powers granted the court with respect to such motions by rule 50(b), as otherwise judgment might be entered on such a motion after the close of the trial and on a ground which could have been met with proof if it had been suggested when the motion was made. We do not mean to say that technical precision need be observed in stating the grounds of the motion, but merely that they should be sufficiently stated to apprise the court fairly as to movant's position with respect thereto."

In view of the provisions of the written motion for a directed verdict and the statement by counsel of the reasons upon which the oral motion was based, the court is of the opinion that the motions sufficiently stated the two grounds now relied upon by the libelant to support its present motion.

■ However, the record shows that the motions for a directed verdict were not made at the close of all the evidence. As heretofore stated, they were made at the conclusion of the evidence adduced in chief by the claimants, and when they

were overruled the libelant proceeded to introduce testimony in rebuttal and the claimants introduced one witness in sur-rebuttal. The motions for directed verdict were not renewed "at the close of all the evidence". This raises the question as to whether the motions are a sufficient basis for the motion now before the court. The rule, 50(b), refers to a motion or motions "made at the close of all the evidence". In Minnehaha County, S. D., v. Kelley, 8 Cir., 150 F.2d 356, the court at page 359 said:

"Defendant challenges the sufficiency of the record to entitle plaintiff to a review of certain of these questions and we shall refer to this question of practice. While defendant interposed a motion for a directed verdict at the close of plaintiff's testimony, yet after the motion was denied it offered evidence in support of its defense. This was a waiver of its motion for a directed verdict. The motion was not renewed at the close of all the evidence. Failure to interpose a motion for a directed verdict at the close of all the testimony and secure a ruling thereon precludes defendant from questioning here the sufficiency of the evidence. Amendment 7 of the Constitution provides, among other things, that, 'The right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.'"

In Home Ins. Co. of New York v. Davila, 1 Cir., 212 F.2d 731, the court at page 733 said:

"It is well-settled that if a motion under Rule 50(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A., asking for a directed verdict at the close of the plaintiff's case is denied, and the defendant thereupon presents his own evidence, this constitutes a waiver of the motion; unless a renewed motion for a directed verdict is made at the close of all the evidence, the defendant is precluded from questioning on appeal the sufficiency of the evidence to take the case to the jury. Minnehaha County, S. D., v. Kelley, 8 Cir., 1945, 150 F.2d 356, 359; Ruud v. American Packing & Provision Co., 9 Cir., 1949, 177 F.2d 538, 542."

Thus, the failure of the libelant to renew its motion or motions for a directed verdict at the close of all the evidence is a sufficient reason for denying the motion now before the court.

■ Moreover, even if the motions were properly before the court, they are without merit and the court would be required to overrule them.

In this connection, the court in the case of Burcham v. J. P. Stevens & Co., Inc., 4 Cir., 209 F.2d 35, 37, speaking through Chief Judge Parker, said:

"It is well settled that on a motion for a directed verdict or on motion for judgment n. o. v. based on such motion, the evidence must be considered in the light most favorable to the party against whom the directed verdict or the judgment n. o. v. is asked, that any conflict in evidence must be resolved in his favor and that every conclusion or inference that can be legitimately drawn therefrom in his behalf must be drawn."

In National Molasses Company v. Herring, 8 Cir., 221 F.2d 256, Judge Sanborn, at page 259 said:

"The general rules for determining whether a trial court was justified in directing a verdict have been so fully and so frequently stated that there is no justification for repeating them, but see Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859, 860, and cases cited; and Hoyt v. Clancey, 8 Cir., 180 F.2d 152, 154–155.

"What frequently seems to be overlooked in cases such as this is that where inconsistent inferences reasonably may be drawn from undisputed evidentiary facts, it is for the jury, and not the court, to de-

termine which inference shall be drawn."

Prior to the conclusion of the testimony, the libelant and the claimants had submitted to the court their requests for instructions to the jury. The libelant submitted 12 requests designated as Special Instructions, Nos. 1 to 12. The claimants submitted requests for 10 special instructions, designated as Special Requests A to I, both inclusive.

Of course, the libelant makes no complaint of the instructions given but only contends that the court should have granted its requests for a peremptory instruction. Notwithstanding the fact that the question before the court is whether a peremptory instruction should have been given in favor of the libelant, yet the court feels that it may be helpful to refer to the request of the libelant on the question before the court and to set forth the principal instructions given by the court.

In libelant's request No. 8 the following appears:

"If you find that the water is recommended for special dietary uses because of its mineral content and its label does not bear the required statements, you will also find it misbranded and subject to being condemned.

"On the other hand, if you find that it will perform all of the functions claimed in the labeling when used as directed, then you should find that the labeling is not false and misleading, and if you find that the water is not recommended for special dietary uses because of its mineral content, then you should find that the water is not misbranded and should not be condemned."

A comparison of the instructions given with the requests of libelant discloses that the court gave practically every request of the libelant except the request for a directed verdict.

Instructions Nos. 7 and 8 given by the court read as follows: (It will be noted that the term "plaintiff" is used in the instructions instead of the term "libelant", and the term "defendants" is used instead of the term "claimants". This was done in an effort to avoid confusing the jury by the use of unfamiliar terms, and was explained to the jury in preliminary instruction No. 1.)

"No. 7

"Plaintiff also contends that the water was misbranded because the labels on the bottles did not bear certain information. Defendants, on the other hand, contend that such information was not required by law.

"You are instructed that under the law there is a difference between labels and labeling. A 'label' means a display of written, printed, or graphic matter upon the immediate container of any article. If any article is represented as a food for special dietary use by reason of its mineral content, the label must bear certain information concerning the mineral properties of the article. In the instant case, the labels on the containers of the water contained no information concerning the mineral properties of the water, and thus the only issue in this regard is whether the water was represented as a food for special dietary use by reason of its mineral content.

"Therefore, if you find from a preponderance of the evidence that the water in question was represented as a food for special dietary use by reason of its mineral content, you should find the issues in favor of the plaintiff and against the defendants. On the other hand, if you find from the evidence that the water was not represented as a food for special dietary use by reason of its mineral content, then you should find that the water was not misbranded by reason of the labels on the containers of said water.

"No. 8

"To summarize, you should consider all the evidence in the case.

"If you find from a preponderance of the evidence that the labeling contained any statement or statements which were false or misleading in any particular, or if you find from a preponderance of the evidence that the water was represented as a food for special dietary use by reason of its mineral content, then you should find the issues in favor of the plaintiff and against the defendants.

"On the other hand, if you find from the evidence that all of the statements contained in the labeling were true, and that none of said statements was false or misleading in any particular, and further find from the evidence that the water was not represented as a food for special dietary use by reason of its mineral content, then you should find the issues in favor of the defendants and against the plaintiff."

Instruction No. 4 given by the court is as follows:

"No. 4

" 'Labeling', as that term is used by the Court, means all labels and other printed, written, or graphic matter upon any articles or upon any of its containers or wrappers, or accompanying such article. The eight pamphlets in evidence in this case were labeling if they were textually related to the Mountain Valley Water which was seized, and if they were designed for use in the distribution and sale of the water, provided the pamphlets and the water were associated together either during shipment or while held for sale. The fact that the pamphlets were shipped at different times than the water does not mean that the pamphlets would not constitute labeling."

In Instruction No. 5 the court said:

"No. 5

"Plaintiff contends that all eight of the pamphlets constituted labeling. Defendants admit that the following four pamphlets were labeling: 'Facts About Mountain Valley Mineral Water from Hot Springs, Arkansas'; 'How Much Mountain Valley Mineral Water Should You Drink?'; 'The Importance of Mountain Valley Water in Arthritic and Rheumatic Disorders'; and 'The Importance of Mountain Valley Water in Kidney and Bladder Disorders.'

"However, defendants deny that the following four pamphlets constituted labeling: 'Mountain Valley Water from Hot Springs, Arkansas, in Pregnancy and Care of Children'; 'Your Health Begins With Nature', 'Is Your Trouble Mineral Deficiency?'; and 'The Story of Mountain Valley Mineral Water from Hot Springs, Arkansas.'

"In determining whether the latter four pamphlets were labeling, you should consider all the evidence in the case. If you find from a preponderance of the evidence that said four pamphlets constituted 'labeling', as heretofore defined by the Court, then you should consider said pamphlets in determining whether the water in question was misbranded. On the other hand, if you find from the evidence that said four pamphlets were not labeling, then you will not consider said pamphlets in determining whether the water was misbranded by reason of the labeling."

The court is aware that this opinion may have been unduly extended by setting out the above instructions, but notwithstanding that the court feels that in the interest of a clear understanding of the reasons which have prompted the court to deny the motion on its merits, Instruction No. 6, as given, should be set forth. It is as follows:

"No. 6

"Under the law, the water involved in this case was misbranded if its labeling was false or misleading in any particular.

"Plaintiff contends that the labeling contained many false and misleading statements, and therefore the water was misbranded. On the other hand, defendants deny that any false or misleading statements were contained in the labeling.

"In determining whether the labeling was false or misleading, you should determine the fair and reasonable meaning of the statements made in the labeling, that is, how they would be read and understood by the average person under ordinary conditions. You should consider statements in context, that is, in relation to preceding and following statements, in determining whether the statements were or are false and misleading.

"You should determine whether or not the water in question will actually perform the functions stated in the labeling, and you should take into account not only representations made or suggested by statement, word, design, device, or any combination thereof in the labeling, but also the extent to which the labeling may fail to reveal facts material in the light of such representations, or facts which are material with respect to consequences which may result from the use of the water under the conditions of use prescribed in the labeling.

"You are also instructed that deception may result from the use of statements not technically false or which may be literally true. The purpose of the law is to prevent people from being misled through indirection and ambiguity as well as by the use of false statements.

"And, if a statement is false and misleading, the fact that it may be accompanied by a suggestion to see or to consult a doctor does not keep the statement from being false and misleading.

"You are instructed that you should consider all the evidence in the case, and if you find from a preponderance of the evidence that the labeling contained any statement or statements which were false or misleading in any particular, then you should find the issues in favor of the plaintiff and against the defendants.

"On the other hand, if you find from the evidence that all of the statements contained in the labeling were true, and that none of said statements was false or misleading in any particular, then you should find that the water in question was not misbranded by reason of the labeling."

To sustain its contention that the water was represented as a food for special dietary uses by reason of its mineral content, the libelant on its brief has quoted excerpts from the following pamphlets, which were admitted by claimants to constitute labeling, to-wit:

"Facts About Mountain Valley Mineral Water from Hot Springs, Arkansas." Government's Exhibits Nos. 7 and 16.

"How Much Mountain Valley Water Should I Drink?" Government's Exhibits Nos. 9 and 36.

"The Importance of Mountain Valley Water in Kidney and Bladder Disorders." Government's Exhibits Nos. 19 and 44.

Learned counsel has also quoted extensively from the following pamphlets, which were not admitted by claimants to constitute labeling, to-wit:

"Your Health Begins With Nature." Government's Exhibits Nos. 15 and 32.

"Mountain Valley Water from Hot Springs, Arkansas, in Pregnancy and Care of Children." Government's Exhibits Nos. 42 and 46.

"The Story of Mountain Valley Mineral Water from Hot Springs, Arkansas." Government's Exhibit No. 10.

"Is Your Trouble Mineral Deficiency? You Will Enjoy Better

Health and Vitality if Your Body Receives Sufficient Minerals." Government's Exhibits Nos. 8 and 17.

There was a serious question as to whether the last four named pamphlets constituted labeling, and that was one of the questions submitted to the jury, and the jury could well have found from the evidence that none of the four were in fact labeling within the law.

It was admitted by all parties at the trial that Mountain Valley Mineral Water is pure. No claims were made that it was artificial in any respect or that it was not a pure and unadulterated natural product. The chemical content of the water has not changed appreciably since 1872. It was shown that the libelant, through the Food and Drug Administration, has made every effort over a period of five or six years to establish that the kidney, bladder, arthritis and rheumatism claims made for Mountain Valley Water were false or misleading. The defense was primarily concerned with the basic merits of the litigation, and it appears to the court now, as it did during the trial, that the libelant is seeking to establish at least a technical violation of the law by asserting against the natural product a strained construction of the regulations which is not used against any other natural product.

The taking of testimony consumed approximately ten days, and to undertake to set forth the testimony that was adduced on the question at issue in relation to other issues not now before the court would require volumes.

At the conclusion of the trial the court gave every possible consideration to all of the pamphlets and all of the evidence, together with all the inferences that could be legitimately drawn therefrom, and at that time was convinced that a jury question was presented as to whether the water was represented as a food for special dietary uses by reason of its mineral content, within the statute and the regulations pursuant thereto. The court remains of the opinion that the question was one for the jury.

To sustain its contention that the water was misbranded concerning the "tetany" claim, the libelant has quoted an excerpt from the pamphlet, "Your Health Begins With Nature". This is one of the pamphlets that the jury was called upon to determine whether it constituted labeling. In addition to the excerpt from the pamphlet, the libelant contends that the uncontradicted testimony shows that the water would have no beneficial effect upon tetany due to chronic diarrhea or disturbances of the parathyroid glands.

Again the court does not think the testimony is undisputed, and is of the opinion that the testimony is ample to support the verdict of the jury on both claims. Certainly if a special verdict had been requested, the jury would have been justified in finding that the four disputed pamphlets were not labeling. Of course, the court does not know whether the jury found that the four disputed pamphlets did not constitute labeling, but the court is convinced that the general verdict returned by the jury is supported by the evidence, and that in considering the evidence the jury followed the instructions given by the court.

Therefore, the motion of libelant for judgment in accordance with the motion for a directed verdict should be denied, and an order in accordance herewith is being entered today.