**UNITED STATES of America,**
**Appellant,**

v.

**353 CASES  *  *  *  MOUNTAIN VAL-**
**LEY  MINERAL  WATER  *  *  *;**
**Mountain Valley Sales Company, a cor-**
**poration, John G. Scott, and H. B. Mc-**
**Farling, Claimants, Appellees.**

**No. 15679.**

United States Court of Appeals
Eighth Circuit.

Aug. 6, 1957.

See, also, 117 F.Supp. 110.

474

Paul M. Steffy, Attorney, Department of Health, Education, and Welfare, Washington, D. C. (Warren Olney III, Asst. Atty. Gen., Charles W. Atkinson, U. S. Atty., Fort Smith, Ark., Frank J. Kiernan, Attorney, Department of Justice and William W. Goodrich, Asst. General Counsel, Department of Health, Education, and Welfare, Washington, D. C., on the brief), for appellant.

J. F. Schlafly, Jr., Alton, Ill. (Robert F. Schlafly, St. Louis, Mo., and Edward L. Wright, Little Rock, Ark., on the brief), for appellees.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal by the United States from an adverse judgment in a libel proceeding brought by it on August 19, 1953, in the Western District of Tennessee, for the condemnation, under § 304(a) of the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1040, as amended, 21 U.S.C. A. § 334(a), of a quantity of allegedly misbranded Mountain Valley Mineral Water, bottled by the Mountain Valley Spring Company, of Hot Springs, Arkansas, and shipped in interstate commerce. At the time of seizure in the libel proceeding, the water and its accompanying sales literature was located at 2089 Madison Avenue, Memphis, Tennessee, in the possession of an authorized distributor, Henry Branson McFarling, doing business as Mountain Valley Water Company.

How the case came ultimately to be tried, in the spring of 1956, before the United States District Court for the Western District of Arkansas and a jury, at Hot Springs, Arkansas, can be gathered from United States v. United States District Court for the Eastern District of Arkansas, 8 Cir., 226 F.2d 238.

The claim of the Government that the water was misbranded, and therefore subject to condemnation, was based upon the assertions: (1) that the "labeling" (promotional sales literature and advertising), accompanying the water,[1] falsely

---

1. By § 201(m) of the Act, 21 U.S.C.A. § 321(m), "labeling" means "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article," in the sense of

represented it to be an adequate and effective treatment for various diseases and disorders, and contained other false statements [§ 502(a) of the Act, 21 U.S. C.A. § 352(a) ];[2] and (2) that the water was represented for special dietary uses, and that its label did not bear the information concerning its mineral properties, determined by regulations (21 C.F.R. § 125.4, promulgated in 1941) to be necessary "in order fully to inform purchasers as to its value for such uses," as is required by § 403(j) of the Act, 21 U.S.C.A. § 343(j).[3]

The Mountain Valley Sales Company, of Hot Springs, Arkansas, a subsidiary of the Mountain Valley Spring Company which bottled the water, filed a claim for the water and a separate claim for "24 pamphlets, more or less, entitled 'Your Health Begins With Nature'," and "24 pamphlets, more or less, entitled, 'Mountain Valley Water From Hot Springs, Arkansas, in Pregnancy and Care of Children'," which pamphlets had been seized in the libel proceeding.

John G. Scott, of Yonkers, New York, "the Mountain Valley distributor in New York and in the New York area," filed a claim asserting ownership of three of the seized pamphlets entitled, "Helping to Stay Young Through Minerals." He moved to dismiss the libel as to the three pamphlets on the ground that they did not constitute labeling and had been unlawfully seized. He also moved to suppress the pamphlets as evidence, on the

ground that they had been obtained in violation of his constitutional rights; this upon the theory that Government Agents had unlawfully used decoys and subterfuge in procuring the pamphlets from the Memphis distributor.

McFarling, the distributor from whom the water and pamphlets were taken, filed a claim for the following seized literature, of which he asserted he was the owner:

"146 pamphlets, more or less, entitled 'The Importance of Mountain Valley Water in Arthritic and Rheumatic Disorders'

"80 pamphlets, more or less, entitled 'The Importance of Mountain Valley Water in Kidney and Bladder Disorders'

"7 pamphlets, more or less, entitled 'The Story of Mountain Valley Mineral Water from Hot Springs, Arkansas'

"123 pamphlets, more or less, entitled 'Is Your Trouble Mineral Deficiency?'

"500 pamphlets, more or less, entitled 'Facts About Mountain Valley Mineral Water from Hot Springs, Arkansas'

"4 pamphlets, more or less, entitled 'Why Everyone Should Drink Two Quarts of Water Each Day'

"50 pamphlets, more or less, entitled 'How Much Mountain Valley Mineral Water Should I Drink?' "

---

supplementing or explaining it. Kordel v. United States, 335 U.S. 345, 350, 69 S.Ct. 106, 93 L.Ed. 52; V. E. Irons, Inc., v. United States, 1 Cir., 244 F.2d 34, 39. "Label" is defined as "a display of written, printed, or graphic matter upon the immediate container of any article; * * *." Sec. 201(k) of the Act, 21 U.S.C.A. § 321(k).

2. "§ 352. [21 U.S.C.A.] *Misbranded drugs* * * *
   "A drug * * * shall be deemed to be misbranded—
   "(a) If its labeling is false or misleading in any particular."

3. "§ 343. [21 U.S.C.A.] *Misbranded food*
   "A food shall be deemed to be misbranded—

* * * * *

"(j) If it purports to be or is represented for special dietary uses, unless its label bears such information concerning its vitamin, mineral, and other dietary properties as the [Federal Security] Administrator [the Secretary of Health, Education, and Welfare since April 11, 1953, 67 Stat. 631, 632] determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses."

"Food" is defined by § 201(f) of the Act, 21 U.S.C.A. § 321(f), as "(1) articles used for food or drink for man or other animals, * * *."

McFarling also filed a motion to suppress the pamphlets as evidence.

The trial court deferred ruling on the several motions to suppress evidence and to dismiss the libel, until the trial of the case on the merits. The motions ultimately disappeared from the case.

All of the claimants were represented by the same counsel. It is apparent from the record that the party most interested in defending against the libel was the Mountain Valley Spring Company, of Hot Springs, Arkansas. It has for many years bottled the water from the Mountain Valley Spring, which is located about ten miles by road from the city of Hot Springs, and has sold the water rather generally throughout the United States to authorize distributors, and to dealers through its subsidiary the Mountain Valley Sales Company.

At the trial, the issues were: (1) whether the sales literature introduced in evidence by the Government constituted "labeling" of the water within the meaning of 21 U.S.C.A. § 321(m); (2) whether the labeling was "false or misleading in any particular" [21 U.S.C.A. § 352(a)]; and (3) whether the water was represented for special dietary uses.

The Government, having the burden of proof, first introduced its evidence tending to support its charges that the representations contained in much of the sales literature with respect to the medicinal and therapeutic qualities of the water were false or misleading, and to show that the water was represented for special dietary uses. The claimants then introduced evidence to show that the representations contained in four pamphlets, which they contended were the only ones used by the Memphis distributor, and therefore the only ones constituting "labeling", were not false or misleading. They denied that the water was represented for special dietary uses, but did not claim that the labels on the bottles contained the information required by 21 U.S.C.A. § 343(j).

At the close of the claimants' evidence, the Government made a written motion for a directed verdict on the grounds:

"The uncontroverted evidence in this case shows that Mountain Valley Mineral Water is recommended and suggested for use as a food for special dietary uses because of its mineral content. The labels on both sizes of bottles seized fail to bear the information required by 21 U.S.C. [§] 343(j) and 21 C.F.R. [§] 125.4. For this reason, the mineral water is, as a matter of law, misbranded within the meaning of 21 U.S.C. [§] 343(j) and should be condemned pursuant to 21 U.S.C. [§] 334(a) & (b)."

In ruling upon the motion, the court said:

"Now, this motion of the plaintiff or libelant for a directed verdict on the question of the alleged misbranding of the water as appearing in the exhibit, the bottles introduced here, raises this question. Water may be considered a food when used under the statute for dietary uses. Now, if the court was satisfied that this water was recommended for special dietary uses, then I think the motion probably should be granted, but I am not certain at all on that. * * * I think that is a question that the court must submit to the jury."

At the time of this ruling, the trial was virtually at an end so far as the taking of evidence was concerned, and the court was considering requests for instructions. The court then said to counsel: "I think we can reasonably assume that the testimony will close this afternoon, at 2:30 or 3:00." The record shows that the Government called two rebuttal witnesses, and the claimants called one witness on surrebuttal. This additional testimony had nothing to do with the question whether the water was represented for special dietary uses. At the close of this rebuttal evidence, the Government's motion for a directed verdict was

not renewed. But when the court called upon counsel for their objections, if any, to the instructions, counsel for the Government said:

"The libelant has no objections except for the failure to direct a verdict upon the charge that the water is misbranded because it fails to bear statements required by Section 343–J, of the Federal Food, Drug, and Cosmetic Act, since it is represented as a food for special dietary uses because of its mineral content * * *."

The court overruled the objection.

The jury's verdict found all issues in favor of the claimants. The Government moved for judgment notwithstanding the verdict, in accordance with its motion for a directed verdict. This the court denied on the grounds (1) that by not renewing the motion for a directed verdict at the close of the entire evidence, the motion was waived, and (2) that the issues were all issues of fact and the verdict of the jury was supported by the evidence. The opinion of the court is found at 143 F.Supp. 219.

The claimants now insist that the failure of the Government to renew its motion for a directed verdict after the last witness had testified precludes the review of the question whether, under the evidence and the applicable law, the case was mistakenly submitted to the jury.

■ O'Malley v. Cover, 8 Cir., 221 F. 2d 156, states the well known general rule that to preserve for review the question of the sufficiency of the evidence to take a case to the jury, there must be a motion for a directed verdict at the close of the evidence. The Government contends that, under the evidence, misbranding of the water was conclusively proven, and that this was sharply, definitely and adequately called to the attention of the trial court by the motion for a directed verdict made at the close of all of the evidence which had anything to do with the grounds upon which the motion was based, as well as by the Government's objection, before the jury re-tired, to the court's failure to direct a verdict.

■■ We think that as a practical matter the Government did all that was necessary to preserve for review the question whether it was entitled to a directed verdict. This Court, moreover, in the public interest and to guard against injustice, may, of its own motion, notice errors which have not been properly preserved for review, if such errors are obvious, or if they otherwise seriously affect the fairness and integrity of the judicial proceedings. United States v. Socony-Vacuum Oil Co., Inc., 310 U.S. 150, 239, 60 S.Ct. 811, 84 L.Ed. 1129; United States v. Bernays, 8 Cir., 158 F. 792, 794; New York Life Ins. Co. v. Rankin, 8 Cir., 162 F. 103, 108; Baltimore & Ohio Railroad Co. v. McCune, 3 Cir., 174 F. 991, 992; Hart v. Adair, 9 Cir., 244 F. 897, 900; Ayers v. United States, 8 Cir., 58 F.2d 607, 609; Prudential Ins. Co. of America v. Morris, 3 Cir., 72 F.2d 824; Cox v. United States, 8 Cir., 96 F.2d 41, 43.

We have not insisted upon technical perfection in the preservation of alleged errors for review. In the recent case of Railway Express Agency, Inc., v. Epperson, 8 Cir., 240 F.2d 189, counsel for the defendant moved for a directed verdict at the close of the evidence, but his motion was defective in failing to state "the specific grounds therefor", as required by Rule 50(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. A ruling that the motion was inadequate to preserve for review the question of the sufficiency of the evidence to take the case to the jury would have been technically correct. We said (at page 193 of 240 F.2d): "There was nothing specific about the grounds stated by defendant's counsel in his motion for a directed verdict. It is apparent, however, that the trial judge knew what counsel was driving at. So once again we shall accept intent for performance." And Rule 1 of the Federal Rules of Civil Procedure provides that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action."

The public has too vital an interest in the proper and truthful labeling of whatever is sold for human consumption to justify basing a decision upon what, under the circumstances, was a mere technical oversight which misled neither the trial court nor opposing counsel. If, under the evidence and the applicable law, the water was misbranded, it ought to be condemned in the public interest. "The problem is a practical one of consumer protection, not dialectics." United States v. Urbuteit, 335 U.S. 355, 358, 69 S.Ct. 112, 114, 93 L. Ed. 61.

How much of the sales literature seized with the water in Memphis constituted "labeling" within the meaning of 21 U.S.C.A. § 321(m) was an issue in the case. Of the eight pamphlets seized in the distributor's place of business and introduced in evidence, the claimants conceded that four were "labeling", namely those entitled: "Facts About Mountain Valley Mineral Water from Hot Springs, Arkansas"; "How Much Mountain Valley Mineral Water Should You Drink?"; "The Importance of Mountain Valley Water in Arthritic and Rheumatic Disorders"; and "The Importance of Mountain Valley Water in Kidney and Bladder Disorders." The other four, which bore the following titles, "Mountain Valley Water from Hot Springs, Arkansas, in Pregnancy and Care of Children"; "Your Health Begins With Nature"; "Is Your Trouble Mineral Deficiency?"; and "The Story of Mountain Valley Mineral Water from Hot Springs, Arkansas," the government contended were also "labeling". The claimants, however, insisted that they were not. This, ostensibly because of evidence that they had not been used by the distributor in connection with selling the water in Memphis. However, all of the pamphlets were obviously printed for use generally in promoting the sale of the water, and were useful for no other purpose. All of them were found in the place of business of the local distributor, and were approved advertising matter, available upon request. The President of the Mountain Valley Spring Company testified, as a witness for the claimants, that he knew of no sales literature being printed that was not approved.

The interpretation accorded the phrase "special dietary uses" by the agency selected by Congress to enforce the Federal Food, Drug, and Cosmetic Act is found at 21 C.F.R. § 1.11, and reads as follows:

"§ 1.11 *Special dietary uses.* (a) The term 'special dietary uses', as applied to food for man, means particular (as distinguished from general) uses of food, as follows:

"(1) Uses for supplying particular dietary needs which exist by reason of a physical, physiological, pathological or other condition, including but not limited to the conditions of diseases, convalescence, pregnancy, lactation, allergic hypersensitivity to food, underweight, and overweight;

"(2) Uses for supplying particular dietary needs which exist by reason of age, including but not limited to the ages of infancy and childhood;

"(3) Uses for supplementing or fortifying the ordinary or usual diet with any vitamin, mineral, or other dietary property. Any such particular use of a food is a special dietary use, regardless of whether such food also purports to be or is represented for general use. * * *"

We do not propose to set out in this opinion all of the statements in all of the pamphlets, which the Government contends were conclusively shown by the evidence to constitute "labeling", representing that the water has "special dietary uses". From the sales literature received in evidence, it is clear that the water was recommended for such uses. In the pamphlet "Facts About Mountain Valley Mineral Water From Hot Springs, Ark." (conceded by claimants to be "labeling"), the following appears:

"What makes it so helpful?

\* \* \* \* \* \*

"4. Its low sodium. Mountain Valley Water, with less than 3 parts per million, is ideal for the low-salt diet often advised in High Blood Pressure and Congestive Heart conditions.

"5. Its aid to digestion. When used daily for a few weeks, Mountain Valley Water tends to improve the digestion of protein and fat substances of food.

\* \* \* \* \* \*

"7. Its helpful trace minerals, including fluorine for teeth and dental caries.

\* \* \* \* \* \*

"*Does it Over-mineralize the System?* No. Laboratory research indicates that the predominant mineral in Mountain Valley Water—calcium—is utilized by the body, but where the body already receives an adequate supply of calcium, the drinking of Mountain Valley Water does not tend to increase the amount of calcium in the body.

\* \* \* \* \* \*

"Where Mountain Valley Water is not being used as an aid in treatment, it is usually consumed in place of ordinary water, with and between meals."

In "How Much Mountain Valley Mineral Water Should I Drink?", appears:

"With Meals—Competent medical opinion today advises water with meals. Mountain Valley is especially suitable, furnishing assimilable calcium, magnesium and other vital minerals."

In "The Importance of Mountain Valley Water in Kidney and Bladder Disorders", appears the statement that "Pure Mountain Valley Water contains certain minerals which help proper kidney function."

In "Your Health Begins with Nature", which the claimants deny was "labeling", but which, we think, obviously was "labeling", there were many statements representing the water as a dietary supplement. The following are examples:

"The influence of Mountain Valley on the metabolic process, the changing of food to heat-energy, is most healthful. This assistance benefits all ages—from infants to elderly men and women. Children need Mountain Valley Water to supplement the calcium they use for teeth and bones. Adults appreciate Mountain Valley for the general 'good health' which seems to be with those who drink it regularly.

\* \* \* \* \* \*

"Mineral Analysis in Parts Per Million

"Calcium Bicarbonate—315.43—The rich calcium intake available in Mountain Valley Water helps prevent decalcification in many cases. It contributes to the bone-building process, helps ward off bone diseases, and stimulates kidney secretion.

\* \* \* \* \* \*

"Sodium—2.88—Mountain Valley's remarkably low sodium content is especially important to persons suffering from congestive heart failure, high blood pressure, and certain kidney conditions. It is often recommended by doctors to patients on low sodium diets.

\* \* \* \* \* \*

"Pregnancy

\* \* \* \* \* \*

"Mountain Valley is also prescribed for its high assimilable calcium content. During the latter half of pregnancy, the mother is required to supply the baby large amounts of calcium for bone building. If sufficient calcium isn't supplied by the mother's diet, decalcification of the mother's bones or teeth often occurs.

"Frequently during pregnancy the attending physician will recommend a low salt diet. In such cases Mountain Valley is particularly advisable because of its exceptionally low sodium content.

"Diarrhea

"During infancy and sometimes adulthood, chronic diarrhea may be complicated by the development of tetany, a condition of muscular spasms which is due to inadequate calcium in the blood. A similar condition occurs in certain disturbances of the parathyroid glands. Under both of these circumstances, Mountain Valley Water, because of its usable calcium, is a valuable dietary adjunct."

The other pamphlets in evidence we think are largely cumulative and need not be referred to.

We think that all of the sales literature received in evidence was, as a matter of law, "labeling" (see and compare, Kordel v. United States, 335 U.S. 345, 350, 69 S.Ct. 106, 93 L.Ed. 52; United States v. Urbuteit, supra, 335 U.S. 355, 358, 69 S.Ct. 112, 93 L.Ed. 61; V. E. Irons, Inc., v. United States, 1 Cir., 244 F.2d 34, 39), and that the question whethed the literature was "labeling" was not an issue for the jury.

While no question as to the validity of regulation § 1.11 (21 C.F.R.) defining "special dietary uses" was raised in the trial, and although a federal appellate court is seldom justified in ruling upon a question not raised or ruled upon at the trial (Warner v. Dworsky, 8 Cir., 194 F.2d 277, 278), the claimants challenge the validity of the regulation upon the ground that it was not issued pursuant to a hearing, evidence, and detailed findings of fact, as required by § 701(e) of the Act, 21 U.S.C.A. § 371(e). We cannot agree. The regulation is an interpretative ruling which merely states the meaning accorded to the phrase "special dietary uses" by the Federal Food and Drug Administration. The ruling was adopted more than fifteen years ago. It did not prescribe the information which must appear on the label of the containers for foods for special dietary uses. The regulations prescribing the required information appear at 21 C.F.R. § 125.4. It is unnecessary to set them out in this opin-

ion, since it is conceded that the labels on the bottles did not contain the required information. These regulations were adopted after notice and hearing, and the contention that they are invalid because the ruling § 1.11 explaining the meaning the Food and Drug Administration proposed to place on the phrase "special dietary uses" was issued without notice and hearing, we regard as without merit.

In Gibson Wine Co., Inc., v. Snyder, 90 U.S.App.D.C. 135, 194 F.2d 329, 331, the court said:

"The distinctive characteristics of interpretative rulings, as contrasted with so-called regulations, have long been recognized. Administrative officials frequently announce their views as to the meaning of statutes or regulations. Generally speaking, it seems to be established that 'regulations', 'substantive rules' or 'legislative rules' are those which create law, usually implementary to an existing law; whereas interpretative rules are statements as to what the administrative officer thinks the statute or regulation means. * * *."

In fairness to the claimants, it should be said that no suggestion has been made that the water in suit is adulterated or is not a wholesome, natural mineral spring water, suitable for human consumption. The Federal Food and Drug Administration, which the claimants evidently regard as unjustifiably intermeddling in their affairs, does not see eye to eye with them in regard to many of their representations of the curative, remedial, medicinal and dietary properties of the water. Some of these representations are unquestionably fanciful, and some no doubt, extravagant. It seems unfortunate that the water should not be sold for what it is and in conformity with the applicable regulations of the Federal Food and Drug Administration.

Our conclusion is that the water in suit was conclusively shown to be misbranded, because it was represented, by its labeling, for special dietary uses and

because the labels on the bottles did not contain the information required by the applicable regulations.

The judgment appealed from is reversed, and the case is remanded with directions to enter a judgment of condemnation.