**UNITED STATES of America,**
Libelant,

v.

**353 CASES, ETC., OF MOUNTAIN VALLEY WATER,** Mountain Valley Sales Company et al., Claimants.

Civ. A. No. 565.

United States District Court
W. D. Arkansas,
Hot Springs Division.

July 13, 1961.

See also 117 F.Supp. 110.

---

2. See Footnote 1.

**686**

Charles W. Atkinson, U. S. Atty., Fort Smith, Ark., for libelant.

Robert F. Schlafly, St. Louis, Mo., J. F. Schlafly, Jr., Alton, Ill., Edward L. Wright, Little Rock, Ark., for claimants.

JOHN E. MILLER, Chief Judge.

On June 13, 1961, the costs in the above entitled case were taxed by the Clerk of the Court in the sum of $7,-085.50. On June 14, 1961, claimants H. B. McFarling, John G. Scott, and Mountain Valley Sales Company filed their motion under Rule 54(d), Fed.R. Civ.P., 28 U.S.C.A., to review the taxation and to retax the costs in accordance with the objections set forth in the motion.

There are no objections to items 1, 4, 7 and 8, but the claimants object to a portion of items 2, 3, 5 and 6, and ask the court to "disallow the part of such expenses incurred in libelant's unsuccessful effort to prove its charges of false claims under Sections 352(a) and 343(a) of the Act, as alleged in paragraphs 3 and 5 of the libel."

The libel was originally filed in the United States District Court for the Western District of Tennessee on August 19, 1953. An examination of D. C.W.D.Ark.1953, 117 F.Supp. 110; D. C.E.D.Ark.1955, 135 F.Supp. 333; United States v. United States District Court, etc., 8 Cir., 1955, 226 F.2d 238; United States v. 363 Cases, etc., D.C.W. D.Ark.1956, 143 F.Supp. 219; United States v. 353 Cases, etc., 8 Cir., 1957, 247 F.2d 473, and United States v. Miller, 8 Cir., 1958, 256 F.2d 89, will disclose the course that this proceeding has followed since its filing.

The case was finally tried to a jury May 21 to June 2, 1956. At the close of the claimants' evidence, the Government filed a written motion for directed verdict on the ground that the uncontroverted evidence showed that the Mountain Valley mineral water was recommended and used as a food for special dietary uses because of its mineral contents; that the labels on both sizes of bottles failed to bear the information required by 21 U.S.C.A. § 343(j), and 21 C.F.R., Sec. 125.4. For this reason the mineral was, as a matter of law, misbranded within the meaning of 21 U.S.C.A. § 343(j), and should be condemned pursuant to 21 U.S.C.A. § 334 (a) and (b). The motion was denied, the case was argued to the jury, and immediately after the instructions to the jury were given by the court, counsel were called upon, in the absence of the jury and before the jury retired to consider its verdict, to state their objections, if any, to the instructions. Whereupon counsel for the Government said:

"The libelant has no objections except for the failure to direct a verdict upon the charge that the water is misbranded because it fails to bear statements required by Section 343—J, of the Federal Food, Drug, and Cosmetic Act, since it is represented as a food for special dietary uses because of its min-

eral content * * *." 247 F.2d 476–477.

The jury returned a verdict in favor of the claimants and against the libellant, and judgment was entered upon the verdict.

In due time the libelant filed its motion for judgment notwithstanding the verdict on two grounds, which motion, omitting the formal parts, is as follows:

"(1) The uncontroverted evidence in this case shows that Mountain Valley mineral water is recommended and suggested for use as a food for special dietary uses because of its mineral content. The labels on both sizes of bottles seized failed to bear the information required by 21 U.S.C. § 343(j) and 21 C.F.R. [Sec.] 125.4. For this reason the mineral water is as a matter of law misbranded within the meaning of 21 U.S.C. § 343(j) and should be condemned pursuant to 21 U.S.C. § 334(a) and (b).

"(2) For further grounds, libelant urges that all of the evidence in the case with respect to the charge that the article is falsely represented as effective treatment for tetany due to disturbances of the parathyroid glands, including that adduced by the claimants, is to the effect that statements and representations are made for such condition, and the water will not provide the promised benefits." 143 F.Supp. 222.

The motion was denied, and an appeal to the United States Court of Appeals for the Eighth Circuit was perfected.

Of the eight pamphlets seized in the distributor's place of business and introduced in evidence, the claimants conceded that four were "labeling." The Government contended that four additional pamphlets were also "labeling." The claimants contended that the four disputed pamphlets were not labeling because the evidence showed that they had not been used by the distributor in connection with selling the water in Memphis, but all of the pamphlets were approved advertising matter and available upon request.

At page 478 of 247 F.2d, the court said:

"We do not propose to set out in this opinion all of the statements in all of the pamphlets, which the Government contends were conclusively shown by the evidence to constitute 'labeling', representing that the water has 'special dietary uses'. From the sales literature received in evidence, it is clear that the water was recommended for such uses."

At page 480 of 247 F.2d, the court said:

"We think that all of the sales literature received in evidence was, as a matter of law, 'labeling' * * and that the question whether the literature was 'labeling' was not an issue for the jury."

The court further said:

"Our conclusion is that the water in suit was conclusively shown to be misbranded, because it was represented, by its labeling, for special dietary uses and because the labels on the bottles did not contain the information required by the applicable regulations.

"The judgment appealed from is reversed, and the case is remanded with directions to enter a judgment of condemnation."

Upon the filing of the mandate, this court on December 19, 1957, entered a judgment, to the provisions of which the libelant objected. The libelant filed a petition for writ of mandamus, which was heard by the Court of Appeals on May 28, 1958, and the court directed the Judge of this court to amend the judgment that had been entered on December 19, 1957, "by eliminating paragraph 2 and striking out in paragraph 5 the words, 'which are directly referable to the misbranding adjudged herein.'" 256 F.2d 89–90.

Accordingly, on October 24, 1958, the court amended the judgment, and on October 28, 1958, the Court of Appeals found that since "the said order or amended judgment is in accordance with the opinion, ruling and order of this court, it is, therefore, now here ordered and adjudged by this court that the petition for writ of mandamus be, and it is, hereby dismissed."

Title 21 U.S.C.A. § 343, is as follows:

"A food shall be deemed to be misbranded—

"(a) If its labeling is false or misleading in any particular.

\* \* \* \* \* \*

"(j) If it purports to be or is represented for special dietary uses, unless its label bears such information concerning its vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses."

Title 21, C.F.R., Sec. 125.4, is as follows:

"*Label statements relating to minerals.*

"(a) (1) If a food purports to be or is represented for special dietary use by man by reason of its mineral property in respect of:

Calcium,
Phosphorus,
Iron, or
Iodine,

the label \* \* \* shall bear a statement of the proportion of the minimum daily requirement for such element supplied by such food when consumed in a specified quantity during a period of one day."

In numbered paragraph 4 of the complaint the libelant alleged that the water was misbranded when introduced into, while in, and while held for sale after shipment in interstate commerce within the meaning of Sec. 343(j), supra, in that it purports to be and is represented as a food for special dietary uses by reason of its mineral contents, and its label fails to bear the information required by the regulation which the Secretary of Health, Education and Welfare had determined to be necessary in order to fully inform purchasers as to its value for such uses.

Title 21 U.S.C.A. § 352, provides:

"A drug or device shall be deemed to be misbranded—

"(a) If its labeling is false or misleading in any particular."

In numbered paragraph 3 it was alleged that the water was misbranded within the meaning of Sec. 352(a), supra, in that its labeling contained representations and suggestions that were false and misleading.

In numbered paragraph 5, the complaint alleged that the water was further misbranded within the meaning of Sec. 343(a) in that its labeling contained representations and suggestions that were false and misleading.

Rule 54(d), Fed.R.Civ.P., provides:

"Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; \* \* \*."

Title 21 U.S.C.A. § 334(e), reads:

"When a decree of condemnation is entered against the article, court costs and fees, and storage and other proper expenses, shall be awarded against the person, if any, intervening as claimant of the article."

In the brief of libelant in opposition to the motion to review the taxation of costs, the learned attorneys for libelant state:

"It is conceded that the statute does not remove the court's discretion in controlling the costs that should be taxed, which discretion is necessary to prevent the abuse of process, but no construction of that statute is necessary to fully understand its mandate."

In Spiritwood Grain Co. et al. v. Northern Pac. Ry. Co., 8 Cir., 1950, 179 F.2d 338, at page 344, the court said:

"Ordinarily the taxing of fees and mileage for witnesses in federal courts is within the sound discretion of the trial court * * *. Witness fees are taxable even though the witness attends court voluntarily and without a subpoena."

Rule 45(e), Fed.R.Civ.P., provides:

"At the request of any party subpoenas for attendance at a hearing or trial shall be issued by the clerk of the district court for the district in which the hearing or trial is held. A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial specified in the subpoena; and, when a statute of the United States provides therefor, the court upon proper application and cause shown may authorize the service of a subpoena at any other place."

Title 21 U.S.C.A. § 337, reads as follows:

"All such proceedings for the enforcement, or to restrain violations, of this chapter [Food and Drugs] shall be by and in the name of the United States. Subpoenas for witnesses who are required to attend a court of the United States, in any district, may run into any other district in any such proceeding."

The above statute was enacted September 3, 1954, and eliminated reference to former Section 654 of Title 28, which section had been repealed by the Act of June 25, 1948, Sec. 39, 62 Stat. 992, as its provisions were covered by Rule 17(e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., and Rule 45(e) of the Federal Rules of Civil Procedure.

In United States v. Arizona Canning Co., 10 Cir., 1954, 212 F.2d 532, at page 533, the court said:

"The government has appealed only from that part of the order limiting the assessment of mileage costs and consequent per diem to 100 miles from the place of trial, contending that the power to subpoena and to assess costs therefor is controlled by § 307 of the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1046, 21 U.S.C.A. § 337, providing that '* * * Notwithstanding the provisions of section 876 of the Revised Statutes [superseded in 1948 by Rule 45(e) (1)], subpenas for witnesses who are required to attend a court of the United States, in any district, may run into any other district in any such proceeding.'"

On page 534 the court said:

"If § 307 of the Act is specifically and exclusively applicable to the trial proceedings in a case of this kind, the question then arises whether the use of the word 'may' authorizes the court to exercise discretion in the allowance of mileage fees to witnesses subpoenaed from 'any other district.' In the very nature of things any doubt concerning the discretion of the court to assess costs incident to the trial should be resolved in favor of the discretion. But in the view we take of this case, it is unnecessary to resolve that point, for we are convinced that § 307 of the Act should be construed in pari materia with Rule 45(e) (1). As thus construed, the court was empowered, upon proper application and cause shown, to authorize the service of the subpoenas to any district, and since the power to assess costs is inherent in the power to subpoena, see Barnhart v. Jones, supra [D.C., 9 F.R.D. 423], the court was empowered to assess the costs in this case as an incident to the issuance of the subpoenas."

As heretofore shown, the Court of Appeals for this Circuit on October 19, 1955, 226 F.2d 238, 242, ordered "that the files in the case * * * be transferred from the Eastern District of Arkansas, Western Division, to the Western District of Arkansas, Hot Springs Division, in order that that court may be in a position to proceed with the case."

Upon the transfer of the case, following the mandate of the Court of Appeals, the libelant, without application or cause shown, began procuring the issuance of subpoenas to other districts and arranged for the attendance of a great number of witnesses, whose testimony was directed solely to the allegations contained in numbered paragraphs 3 and 5 of the libel.

Under item 6 of the bill of costs, the Clerk has charged $3,155.57 as "costs of trial."

Attached to the bill of costs is a list of 25 named witnesses, divided into two groups. The first group of 12 under the item were paid $1,756.10 by the libelant, while the remaining 13 in the second group were paid the sum of $1,399.-47, or a total of $3,155.57 charged under item 6.

■ Closely allied with item 6 is item 3 in the bill of costs, where the Clerk has charged "fees for witnesses, attached," $1,839.22. The attachment shows that fees and mileage were paid to the 16 witnesses named in this item, aggregating $1,839.22. The testimony of all of the 25 witnesses, whose fees and mileage were charged under item 6, dealt with the medical issues except J. P. Durham and L. J. Cramer, who were paid the sum of $246.43. Therefore, item 6 of the bill of costs as charged should be disallowed except in the sum of $246.43.

All of the 16 witnesses whose fees and mileage are charged under item 3 of the bill of costs were called by libelant in its attempt to prove its charges of false claims except Mrs. W. C. Crider and Mrs. Joseph P. Durham, who were paid $220.68. All of item 3 of the bill of costs should be disallowed except the sum of $220.68.

Item 2 of the bill of costs covers "fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case."

The transcript consists of 1,275 pages. Of these, only 112 pages related in any manner to proof of the Government's case on the charge of violation of Section 343(j). Several other pages, however, dealt with pretrial matters and instructions, but notwithstanding the apparent unnecessary expenditure of $701.25 for a full and complete transcript, the court does not feel that it should disallow the item, and in that manner undertake to limit costs allowable for transcripts for use on an appeal to the Court of Appeals. Therefore, the motion to retax item 2 should be denied.

In item 5 of the bill of costs the clerk charged $979.48, "costs incident to taking depositions." Of this amount the sum of $774.80 appears to be depositions of physicians whose testimony dealt only with the medical issue, and therefore there should be deducted from this item the sum of $774.80, leaving $204.68 which should be allowed.

In United States v. Arizona Canning Co., supra, beginning at the bottom of the right-hand column of page 534 of 212 F.2d, the court said:

"No application was made and no cause shown for the issuance of the subpoenas to any other district as provided by the rule. Indeed the record does not show whether a subpoena was in fact issued for the two witnesses, mileage for which is in controversy. But even so, we do not regard such an application and showing prerequisite to the exercise of the court's power under the rule. The court is not powerless at this stage of the proceedings to consider whether the attendance of the two witnesses, one from Washington, D. C., and the other from Siloam Springs, Arkansas, was needful to the establish-

ment of the government's case. That is a matter which the trial court ought to determine in the first instance upon a consideration of the pertinent facts; and it is a matter which the trial court has not considered, feeling itself bound by the limitations of the rule."

█ Judicial discretion, which the court must exercise in considering the questions before it, means sound discretion, exercised not arbitrarily or wilfully, but with just regard to what is right and equitable under the circumstances and the law.

In Home Owners' Loan Corporation v. Huffman, 8 Cir., 1943, 134 F.2d 314, at page 316, the court said:

"Judicial discretion is variously defined. The sense in which the term is commonly used is defined in 1 Bouv. Law Dict., Rawle's Third Revision, page 884, as 'The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.'"

It should be borne in mind that in the answer of the claimants to the libel they denied that the water was represented for special dietary uses, but did not claim that the labels on the bottles contained the information required by 21 U.S.C.A. § 343(j), and the error that this court committed was in failing to peremptorily instruct the jury to return a verdict for the libelant upon the allegations contained in numbered paragraph 4 of the libel. In other words, the libelant, at the close of a long and costly trial, was content to rest its case upon the allegations of a violation of 21 U.S.C.A. § 343(j). See 247 F.2d 473, 476–477.

At page 480 of 247 F.2d, the court said:

"In fairness to the claimants, it should be said that no suggestion ·has been made that the water in suit is adulterated or is not a wholesome, natural mineral spring water, suitable for human consumption. The Federal Food and Drug Administration, which the claimants evidently regard as unjustifiably intermeddling in their affairs, does not see eye to eye with them in regard to many of their representations of the curative, remedial, medicinal and dietary properties of the water. Some of these representations are unquestionably fanciful, and some no doubt, extravagant. It seems unfortunate that the water should not be sold for what it is and in conformity with the applicable regulations of the Federal Food and Drug Administration."

In the original judgment that this court entered on December 19, 1957, the court undertook to limit the costs to be allowed the libelant, but the Court of Appeals, in 256 F.2d 89, held that the action of the court in attempting to limit the costs at that time was improper. The Court of Appeals, in ordering this court to amend the judgment of December 19, 1957, did not in any manner adjudicate or fix the costs that should be allowed, and left that matter to be determined in a proper proceeding within the sound discretion of this court.

The court, after a full review of the record and the conduct of the trial, is of the opinion that the items of costs hereinbefore discussed and considered should not be allowed against the claimants. The testimony of the witnesses, to whom the fees and mileage objected to by claimants were paid, was not necessary to the establishment of the Government's case. No private litigant would have expended the sum of money that has been expended by the libelant in the case. Justice did not demand such expenditures. "The court is not powerless at this stage of the proceedings to consider whether the attendance [from Memphis, Tenn.; Ammandale, Va.; Oak Park, Ill.; Great Falls.

Mont.; Arlington, Va.; Washington, D. C.; Chicago, Ill.; Preston, N. J.; and Rochester, Minn.] of the witnesses [hereinbefore referred to] was needful to the establishment of the government's case." United States v. Arizona Canning Co., supra.

The imposition of such costs on the claimants would in the opinion of the court be unjust, and the motion of claimants should be granted in part, as hereinbefore set forth, and the costs taxed against the claimants as follows:

| | |
|---|---:|
| Item 1—Fee of Marshal | $ 34.90 |
| Item 2—Transcript | 701.25 |
| Item 3—Witness fees | 220.68 |
| Item 4—Photographs of exhibits for transcript | 24.00 |
| Item 5—Depositions | 204.68 |
| Item 6—Trial costs | 246.43 |
| Item 7—Costs in Western District of Tennessee | 298.58 |
| Item 8—Costs in Eastern District of Arkansas | 52.50 |
| Total | $1,783.02 |

An order in accordance with the above is being entered today.