**UNITED STATES of America, Plaintiff,**

v.

**PRO–AG, INC., a corporation and Spencer W. Landswerk, an individual, Defendants.**

**Civ. No. 4–89–560.**

United States District Court,
D. Minnesota,
Fourth Division.

April 24, 1991.

On Motion for Reconsideration
July 15, 1991.

Mary Jo Madigan, U.S. Atty. Office, Jerome G. Arnold, U.S. Atty., and Mary J. Atmore, Asst. U.S. Atty., Minneapolis, Minn., and Denise M. Zavagno, Associate Chief Counsel for Enforcement, Food and Drug Admin., Office of Gen. Counsel, Rockville, Md., for plaintiff.

Paul Allan Sortland and Messerli & Kramer, Minneapolis, Minn., John A. Cochrane, John E. Thomas, and Cochrane & Bresnahan, St. Paul, Minn., for Impro Products, Inc.

DOTY, District Judge.

This matter is before the court on the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Additionally, defendants move for an award of attorneys' fees pursuant to 28 U.S.C. § 2412. For the reasons stated herein, plaintiff's motion for summary judgment will be granted in part and denied in part. Defendants' motions for summary judgment and attorneys' fees will be denied.

## FACTS

Plaintiff United States of America initiated this lawsuit on behalf of the Food and Drug Administration ("FDA") pursuant to the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 332(a). Defendant, Pro–Ag, Inc. ("Pro–Ag"), is the exclusive distributor of whey-based products manufactured by Impro Products, Inc. ("Impro"). Impro is a Minnesota corporation based in Waukon, Iowa. Defendant Spencer W. Landswerk is the president of Pro–Ag.

FDA has brought this lawsuit seeking an injunction permanently enjoining defendants from continuing to market certain Impro products. The products at issue are IMPRO FIRST FOOD (now known as IM-

PRO FIRST FORMULA), IMPRO SECOND FOOD (now known as IMPRO SECOND FORMULA), IMPRO DAIRY FOOD (now known as IMPRO DAIRY FORMULA), IMPRO COUNTDOWN, IMPRO PBA WHEY BLEND, IMPRO MBA WHEY BLEND and IMPRO UTERINE C.A.R.E. According to defendants, the products in question are based on the research of Dr. William E. Petersen. Dr. Petersen was a professor at the University of Minnesota in the 1950s and devised a method of producing antibodies in milk. This method of antibody production has been patented. The patent states that Dr. Petersen's invention relates to the production of a specific antibody or "protective principle" in milk. That antibody or protective principle is effective against a wide range of antigens and is useful for the precipitation of antigens in purification or analysis of protein composition in the matter of an anti-serum. Specifically, the patent states that "the invention concerns the production of milk in its natural state fortified with naturally occurring antibodies to preselected antigens." All of the seven Impro products at issue in this case are essentially similar. Each product is derived from colostral whey of cows that have been injected with different antigens.

Relying on Impro's representations, Pro-Ag maintains that IMPRO FIRST FORMULA, IMPRO SECOND FORMULA, and IMPRO DAIRY FORMULA are marketed and sold as nutritional supplements. Pro-Ag further maintains that IMPRO COUNTDOWN, IMPRO PBA WHEY BLEND, and IMPRO MBA WHEY BLEND are sold as aids to increase milk production. Finally, Pro-Ag contends that IMPRO UTERINE C.A.R.E. is sold as a cleansing agent.

FDA balks at Pro-Ag's characterization of the Impro products as mere nutritional supplements, aids to increase milk production or cleansing agents. Rather, FDA maintains that all seven of Impro products at issue in this matter are "drugs" as that term is defined under FDCA. More specifically, FDA contends that under FDCA the Impro products are "new animal drugs" that are unsafe, adulterated and prohibited from interstate commerce.

Although defendants market the Impro products as nutritional supplements, aids to increase milk production and cleansing agents, in a technical sense defendants classify the products as "food" or at best "biologics." Defendants contend that because the FDA does not have jurisdiction over food or biologics, but only over drugs, that agency may not regulate their distribution of the Impro products and thus is not entitled to an injunction in this matter. FDA maintains that all seven Impro products are drugs, or at the very least, biologics. Moreover, FDA contends that because the products have not been produced and distributed in full conformance with the Virus, Serum and Toxin Act ("VSTA"), they are not biologics subject to regulation under VSTA, but rather fall within FDA's jurisdiction and are subject to regulation under FDCA. Defendants respond that at best their products are biologics and thus fall within the jurisdiction of the United States Department of Agriculture ("USDA") and are subject to regulation, if at all, under VSTA. Consequently, defendants contend that FDA does not have jurisdiction over the Impro products and thus they are entitled to summary judgment in this action. The court will address the cross-motions for summary judgment simultaneously.

## DISCUSSION OF LAW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment

will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552. With this standard at hand, the court will consider the cross-motions for summary judgment.

First, the court must determine whether the various Impro products are "drugs" as that term is used in FDCA, "biologics" as that term is used in VSTA, or simply "food."[1] Second, if the court determines that any of the Impro products are biologics, the court must then determine whether FDA may still exercise jurisdiction over those products because they have not been produced and distributed in full conformance with VSTA. Finally, if the court determines that FDA may exercise jurisdiction over any of the Impro products, the court must determine what consequences follow from that exercise of jurisdiction. The court will address each of these issues in order.

## A. *Drugs, Biologics or Food*

FDCA defines a "drug" in part as "an article intended to diagnose, cure, mitigate, treat, or prevent disease in man or other animals," or "articles (other than food) intended to effect the structure or any function of the body of man or other animals." 21 U.S.C. § 321(g)(1)(B) & (C).

"Biologics" are defined in the Code of Federal Regulations as:

> [A]ll viruses, serums, toxins, and analogous products of natural or synthetic origin, such as diagnostics, antitoxins, vaccines, live microorganisms, killed microorganisms and the antigenic or immunizing components of microorganisms intended for use in the diagnosis, treat-

---

1. Defendants contend that the court need not engage in this analysis because the issue has been determined in previous litigation. Defendants argue that it has already been determined that the Impro products at issue in this case are biologics. In support of that proposition, defendants cite *Impro Products, Inc. v. Block,* 569 F.Supp. 1389 (D.D.C.1983), *rev'd,* 737 F.2d 1206 (D.C.Cir.1984) and *Impro Products, Inc. v. Block,* 722 F.2d 845 (D.C.Cir.1983), *cert denied,* 469 U.S. 931, 105 S.Ct. 327, 83 L.Ed.2d 264 (1984). Those cases, although apparently involving some of the same Impro products at issue in this case, never specifically addressed the issue of whether the products constitute "biologics." In the Eighth Circuit "[t]he doctrine of collateral estoppel applies only when the issue sought to be precluded is the same as that involved in the prior litigation, the issue was actually litigated and the party sought to be estopped was given a full and fair opportunity to be heard on the issue, and determination of the issue was essential to a valid and final judgment." *SEC v. Ridenour,* 913 F.2d 515, 518 (8th Cir.1990) (cita-

tions omitted). Consequently, the cases on which defendants rely are not dispositive of the issue and the court is not bound by the assumption in those cases that the products are biologics. Similarly, defendants have failed to satisfy the requirements for application of the doctrine of res judicata. *See Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983) (holding that the defense of res judicata applies only when there exists an identity of cause of action and of parties to the lawsuit).

Alternatively, defendants argue that because the government has previously taken the stance that the Impro products at issue in this case constitute biologics, it is unfair to now allow the government to argue that the products are drugs. Again, this issue was never specifically litigated by the parties or specifically addressed by the courts in the prior federal litigation cited by the defendants. Defendants have failed to convince the court that plaintiff should be collaterally estopped from asserting that the Impro products at issue in this case are drugs.

ment, or prevention of diseases of animals.

9 C.F.R. § 101.2(w).

At least one United States Circuit Court of Appeals has held that the "common sense" definition of "food" applies to the "other than food" exception contained in FDCA, 21 U.S.C. § 321(g)(1)(C). In *Nutrilab, Inc. v. Schweiker*, 713 F.2d 335 (7th Cir.1983), the Seventh Circuit held that the "other than food" exception in FDCA's definition of "drug" includes products consumed primarily for taste, aroma, or nutritive value. *Id.* at 338.

■ The definitions of drugs, biologics and food which will guide the court's determination in this matter are not mutually exclusive. Indeed, nothing prohibits food from also being a biologic, and all biologics are by definition drugs. *Grand Laboratories, Inc. v. Harris*, 660 F.2d 1288, 1289 (8th Cir.1981), *cert. denied, Grand Laboratories, Inc. v. Schweiker*, 456 U.S. 927, 102 S.Ct. 1972, 72 L.Ed.2d 442 (1982). Determining whether a product falls under FDCA or VSTA, however, is enormously significant to the resolution of the present dispute. Consequently, the court will first attempt to determine whether each of the Impro products at issue in this case is a drug under FDCA, and if not, whether it is a biologic under VSTA.

### 1. Drugs

As the FDCA definition of "drug" quoted above indicates, whether a product is a drug depends on its intended application. A number of federal courts have held that the intended application of a product may be determined from any relevant source, including product labels, labeling, and advertising. *See, e.g., United States v. An Article (Sudden Change)*, 409 F.2d 734, 739 (2d Cir.1969); *United States v. An Article of Drug (Fancy Pure Honey)*, 218 F.Supp. 208, 211 (E.D.Mich.1963), *aff'd*, 344 F.2d 288 (6th Cir.1965). FDCA provides that labeling means all labels and other written, printed or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article. 21 U.S.C. § 321(m).

The parties agree that at some time or another the defendants have drafted, approved or used all of the following promotional materials in connection with their distribution of the Impro products:

1. Countryside Reprint
2. IMPRO DAIRY HANDBOOK
3. Pro–Ag, Inc. Total Production Concept (Dairy)
4. Pro–Ag Consultant Catalog
5. Countdown–Power Your Herd To New Height In Milk Production
6. Pro–Ag Herd Program
7. IMPRO MILK COW PROGRAM
8. IMPRO BREEDING PROGRAM
9. Reasons Why Pro–Ag Is So Cost Effective
10. Pro–Ag Breeding Program For Greater Profits
11. Pro–Ag Impro (Dairy)–Impro Products Increase Milk Production and Improve Feed Efficiency
12. Impro Increases Milk Production, Improves Feed Efficiency
13. Impro Production Program
14. Impro Production For Calves
15. Pro–Ag, Inc., Total Production Concept–Beef
16. The Pro–Ag Production Program Works
17. Countdown Improves Your Odds
18. Impro Swine–Impro Products Increase Pork Production and Improve Feed Efficiency
19. Infused With Uterine C.A.R.E.– She'd Be On Her Way To Making Milk Instead of Hamburger
20. Impro Products *FOODS*

These promotional materials are pertinent to the present action because they contain representations which provide insight into the intended use or application of the Impro products. Plaintiff contends that the promotional materials contain representations which indicate that the Impro products at issue in this case were intended to be used as drugs. Defendants' response is two-fold. First, defendants contend that a number of the promotional materials on

which plaintiff relies have not been used in connection with marketing the Impro products for several years, and thus those promotional materials cannot be considered in the present lawsuit. Second, defendants contend that even if the court considers the promotional materials, the representations contained therein do not lead to the conclusion that the Impro products at issue in this case are drugs. The court will address defendants' contentions in order.

■ First, defendants argue that several of the promotional materials on which plaintiff relies have not been used in connection with marketing the Impro products at issue in this case for several years and thus the court may not consider those promotional materials in ruling on the present motions. Specifically, defendants contend that the IMPRO DAIRY HANDBOOK and the "Countryside" Reprint have not been used for product promotion since 1985. Moreover, defendants maintain that "Reasons Why Impro Is So Cost Effective," "Pro–Ag Breeding Program For Greater Profit," "The Pro–Ag Production Program Works," "Infused With Uterine C.A.R.E.– She'd Be On Her Way To Making Milk Instead of Hamburger," and "Impro Products *FOODS*" have not been used by Pro–Ag as promotional material since 1988.

The question of whether a court may consider promotional literature which was distributed in the past but is no longer distributed in connection with the distribution of a particular product has been addressed by a number of federal courts. Over the years, the courts have agreed that previously distributed promotional material may be considered if it can be shown that customers relied on the representations made in the literature when purchasing the product. As applied to this case, if plaintiffs can demonstrate that Pro–Ag customers purchased any of the Impro products at issue in this litigation in reliance on the representations made in the promotional materials which Pro–Ag no longer distributes, then the court will consider those materials even though they are no longer distributed in connection with the Impro products. Until plaintiff makes such a showing, however, the court will limit its investigation to that promotional literature which is still distributed in connection with the marketing of the Impro products at issue in this case. Eighth Circuit case law dictates this decision. *United States v. Articles of Drug (Caffeine)*,[2] 890 F.2d 1004, 1008 (8th Cir.1989) (quoting *United States v. 3 Cartons, More or Less, "No. 26 Formula GM"*, 132 F.Supp. 569, 574 (S.D.Cal.1952), "[w]here a person has set in motion forces that result in the continued profitable demand for his products, he cannot continue to fill that demand and yet avoid all responsibility for those forces by disclaiming he is still setting them in motion."); *see also United States v. An Article of Drug (B–Complex)*, 362 F.2d 923, 928 (3d Cir.1966) (holding that "[i]t is well settled that the cessation of activities, either before or after suit is begun, does not in itself bar issuance of the injunction. The matter is in the broadest sense for the discretion of the trial court which is best qualified to form a judgment as to the likelihood of a repetition of the offense.");

**2.** If plaintiff can produce evidence demonstrating that Pro–Ag customers relied on the previously distributed promotional literature, the court will consider that literature. Although defendants no longer use the promotional materials in connection with their marketing of the Impro products, their past use of those materials is not so temporally attenuated as to render the representations made in those promotional materials inconsequential to the determination which the court must now make. Consequently, if plaintiff can demonstrate reliance, the court will examine the representations made in the promotional materials in determining whether the Impro products at issue in this case were intended to be used as drugs.

Moreover, if plaintiff establishes reliance, the court will also consider the representations made in the promotional materials in determining whether the Impro products at issue in this case were intended to be used as biologics. Although the cases the court has cited address only the use of promotional literature in determining the intended use of products alleged to be drugs, the court believes the reasoning contained in those cases and the reasons set forth above are equally applicable to determining whether the Impro products at issue in this case were intended to be used as biologics.

*United States v. Undetermined Quantities of an Article of Drug Labeled as "Exachol",* 716 F.Supp. 787, 791 (S.D.N.Y. 1989) (holding that "[c]ourts have recognized that where years later customers purchase a product in reliance on the therapeutic claims of the previous literature marketed with that product, the court may use such literature to determine the intent in marketing the product despite a later disclaimer."); *United States v. Nutrition Service, Inc.,* 227 F.Supp. 375, 388 (W.D.Pa.1964) (holding that "[w]here a distributor has given its customers literature which makes therapeutic claims for its products, and years later the customers continue to rely upon that literature in ordering and prescribing those products, such literature may properly be examined by a Court in seeking to determine whether the products are drugs.").

■ In examining the limited promotional literature which relates to the Impro products at issue in this case, it is clear that certain themes are used in the promotion and marketing of the products. For example, the promotional literature consistently claims that Impro products increase milk production and feed efficiency. Specifically, the Pro–Ag Consultant Catalog touts the benefits of COUNTDOWN including "increased milk production." This claim is made boldly on the COUNTDOWN label which promotes COUNTDOWN as an "aid to increase milk production." The claims on the MBA WHEY BLEND and PBA WHEY BLEND labels mirror the representations made on the COUNTDOWN label. The "recommendations" section on the MBA WHEY BLEND label states that the product is "for use in dairy cows as an aid to increased milk production." The "recommendations" section of the PBA WHEY BLEND label contains the same representation. Additionally, the Pro–Ag Consultant Catalog indicates that MBA WHEY BLEND is to be used in dairy cows as an aid to increased milk production. The promotional leaflet referred to above as "Pro–Ag Impro (Dairy)–Impro products increase milk production and improve feed efficiency," specifically refers to "Impro Countdown,"

"Impro MBA," "Uterine C.A.R.E.," and "Impro First Formula." That flyer unmistakably equates use of UTERINE C.A.R.E. and FIRST FORMULA with increased milk production. Although some of these representations are more explicit than others, there is no question that the labeling on and promotional material distributed in connection with COUNTDOWN, MBA WHEY BLEND, PBA WHEY BLEND, UTERINE C.A.R.E. and FIRST FORMULA, represent that use of those products will result in increased milk production.

A similar, although not identical, product was analyzed in *United States v. Articles of Drug,* No. CV 74–L–136 (D.Neb. Sept. 16, 1976). In that case, the United States District Court for the District of Nebraska had to determine whether a product known as "Silogen" was a drug under 21 U.S.C. § 321(g)(1). The court described "Silogen" as follows:

> Silogen is described on the bag tag as "Dried 'Aoryzae' Fermentation Product for Developing Proper Conditions to Control Silage and High Moisture Grains." It is billed as "The enzyme culture for control of silage and high moisture grains." It is said to be a fermentation culture to be added to silage and produces enzyme organisms, accelerating the carbon dioxide process which controls the temperature of the silage. The promotional materials report that Silogen-treated silage is more palatable and more digestible, contains more of proper fermentation, retains more dry matter, more TBN, and more nutrients, and results in less silage consumed per animal. That a test concluded that the additive resulted in significant improvement in milk fat content, protein digestibility, and deficiency in milk production; and that the animals' digestibility of protein was increased by 7.9 percent when the animals were fed Silogen-treated silage.

*Id.,* slip op. at 5–6. The court held that because Silogen was intended to affect both digestion and milk production it was "designed to affect the structure or functioning of the animal's body" and thus was a drug under 21 U.S.C. § 321(g)(1)(C). *Id.*

at 7. *See also United States v. "Vitasafe Formula M"*, 226 F.Supp. 266, 278 (D.N.J. 1964), *rev'd on other grounds*, 345 F.2d 864 (3d Cir.) *cert denied*, 382 U.S. 918, 86 S.Ct. 290, 15 L.Ed.2d 232 (1965) (holding vitamin and mineral capsules to be drugs because they are intended to affect the structure or function of the body).

In at least two important ways COUNTDOWN, MBA WHEY BLEND, PBA WHEY BLEND, UTERINE C.A.R.E. and FIRST FORMULA are substantially similar to Silogen. First, both Silogen and the five Impro products are intended to be injected into, fed to, or applied to dairy cows. Second, both Silogen and the five Impro products are intended to have similar perceptible effects on the cows which are subjected to the products—namely increased milk production and feed efficiency.[3] Under 21 U.S.C. § 321(g)(1)(C) a product is a "drug" if it is intended to affect the "function of the body of man or other animals." One of a dairy cow's primary functions is to produce milk. If a product is aimed at increasing a cow's milk production, it is necessarily intended to affect that cow's "function." Similarly, a dairy cow's production of milk is dependent on its consumption of feed. If a product aims at altering the amount of feed a cow requires to produce a certain amount of milk, that product necessarily affects the "function" of that cow.

Indeed, it could be argued that the five Impro products fit more squarely within the definition of drug than does Silogen. This is because the five Impro products are designed and intended to be applied directly to dairy cows and change the functions of the cows. On the other hand, Silogen is designed and intended to be added to silage and initially to effect changes in the temperature of the silage. Silogen affects the function of dairy cows only secondarily— i.e., after the dairy cows consume silage which has been treated with Silogen. Unlike Silogen, the five Impro products act initially on dairy cows and do not require the intervention of some intermediate agent. Consequently, the five Impro products more directly affect the "function" of dairy cows than does Silogen.

Because the five Impro products are intended to increase milk production and improve feed efficiency in dairy cows, they are necessarily intended to affect the "function" of those cows. Accordingly, the court concludes that COUNTDOWN, MBA WHEY BLEND, PBA WHEY BLEND, UTERINE C.A.R.E. and FIRST FORMULA are "drugs" as that term is defined in 21 U.S.C. § 321(g)(1)(C).

The court must next determine whether SECOND FORMULA and DAIRY FORMULA are drugs. This is a close question. As indicated above, the court is relying primarily on the promotional literature distributed in connection with the Impro products in determining whether those products are drugs. Moreover, because of the procedural posture of this matter, the court is considering only those promotional materials which are undisputedly still being used to market the Impro products. In examining those promotional materials, it appears that SECOND FORMULA and DAIRY FORMULA are represented as products which are intended to increase milk production and improve feed efficiency. The promotional materials do not specifically make this connection, however, and thus the court cannot definitively conclude that SECOND FORMULA and DAIRY FORMULA are drugs as that terms is defined in 21 U.S.C.

**3.** It should be noted that UTERINE C.A.R.E. is also marketed as a "uterine cleanser" or "uterine flush." UTERINE C.A.R.E.'s use as a uterine cleanser or flush does not exclude that product from being a drug. As the leaflet titled "Pro-Ag Impro (Dairy)–Impro products increase milk production and improve feed efficiency" indicates, use of UTERINE C.A.R.E. is represented to be inextricably bound up with increased milk production and improved feed efficiency. Accordingly, although UTERINE C.A.R.E. may be different from COUNTDOWN, MBA WHEY BLEND, PBA WHEY BLEND and FIRST FORMULA in certain respects, UTERINE C.A.R.E. is intended to be used in a manner, and has an ultimate effect on dairy cows, which is substantially similar to the intended use and effect produced by the other four Impro products addressed above.

§ 321(g)(1)(C).[4]

This does not end the inquiry, however, because the court must still decide whether SECOND FORMULA and DAIRY FORMULA are drugs under 21 U.S.C. § 321(g)(1)(B). That section indicates that drugs are "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals." *Id.* Plaintiff strenuously contends that defendants have made promotional claims sufficient to characterize SECOND FORMULA and DAIRY FORMULA as drugs under § 321(g)(1)(B). The court has thoroughly scrutinized the promotional materials which are still distributed in connection with the marketing of SECOND FORMULA and DAIRY FORMULA and cannot conclude that defendants have made such claims. Accordingly, the court concludes that neither SECOND FORMULA nor DAIRY FORMULA are drugs under 21 U.S.C. § 321(g)(1)(B).

The court notes that its conclusion is limited by the promotional literature which the court has considered. The conclusion is by no means ultimately dispositive of whether SECOND FORMULA and DAIRY FORMULA are drugs. The court is simply stating that after considering the promotional materials which the parties agree are still in use for SECOND FORMULA and DAIRY FORMULA, the plaintiff has failed definitely to prove that those products are drugs as that term is defined in 21 U.S.C. § 321(g)(1). The court will next consider whether SECOND FORMULA and DAIRY FORMULA are "biologics."

## 2. Biologics

The definition of "Biological Products" or "biologics" is found at 9 C.F.R. § 101.-2(w). In general, the definition of biologics can be broken down into two parts, one objective and one subjective. The first part of the definition is objective and refers to "all viruses, serums, toxins, and analogous products of natural or synthetic origin, such as diagnostics, antitoxins, vaccines, live microorganisms, killed microorganisms and the antigenic or immunizing components of microorganisms." *Id.* The second part of the definition may be called subjective because it focuses not on what the product is in itself, but rather to what use it is put. In order to be a biologic, a product must be "intended for use in the diagnosis, treatment, or prevention of diseases of animals." *Id.* There is little debate that SECOND FORMULA and DAIRY FORMULA satisfy the first or objective part of the definition of biologics. The real issue here involves the second part of the definition of biologics. The court must determine whether the defendants intended SECOND FORMULA and DAIRY FORMULA to be used in diagnosis, treatment, or prevention of diseases of animals.

The court notes that this issue bears substantial similarity to the issue of whether a product is a drug under 21 U.S.C. § 321(g)(1)(B). 21 U.S.C. § 321(g)(1)(B) defines "drug" as "articles intended for use in the diagnosis, care, mitigation, treatment, or prevention of disease in man or other animals." As the Eighth Circuit stated in *Grand Laboratories, Inc. v. Harris,* 660 F.2d 1288, 1289 (8th Cir.1981), *cert. denied, Grand Laboratories, Inc. v. Schweiker,* 456 U.S. 927, 102 S.Ct. 1972, 72 L.Ed.2d 442 (1982), "[i]t is [ ] clear that all animal biologics, whether interstate or intrastate are within the literal definition of "drug" under 21 U.S.C. § 321(g)(1)". The court further noted that the particular portion of the definition of "drug" which is relevant to the distinction between drugs and biologics is found in 21 U.S.C. § 321(g)(1)(B). 660 F.2d at 1290. As the court noted above, based on the promotion-

4. The court is tempted to hold that SECOND FORMULA and DAIRY FORMULA are drugs based on the representations made in the supplemental memorandum of defendants dated April 19, 1991. (Supplemental Memorandum of Defendants at 6) (stating that "[a]s stated in the letter of Bert Hawkins, all of these products under consideration are advertised 'for use in dairy cows as an aid to increase milk production.'"). Because it is not absolutely clear to the court that this representation refers to SECOND FORMULA and DAIRY FORMULA, however, the court cannot now determine that those two products are drugs under 21 U.S.C. § 321(g)(1)(C).

al materials which the court has considered, neither SECOND FORMULA nor DAIRY FORMULA are drugs under § 321(g)(1)(B). Because all biologics are drugs, and because the court has already concluded that SECOND FORMULA and IMPRO DAIRY FORMULA are not drugs, the court cannot now conclude that those two products are biologics based on the limited promotional material which the court is allowed to consider at this stage in the proceedings. In short, because neither SECOND FORMULA nor DAIRY FORMULA fall under 21 U.S.C. § 321(g)(1)(B), neither product can satisfy the second part of the definition of biologics set forth in 9 C.F.R. § 101.2(w). Accordingly, the court cannot conclude that SECOND FORMULA or DAIRY FORMULA are biologics.[5]

Based on the promotional literature the court has considered at this time, the court concluded that neither IMPRO SECOND FORMULA nor DAIRY FORMULA are drugs or biologics. Accordingly, at this time the court must accept the defendants' contention that both SECOND FORMULA and DAIRY FORMULA are "nutritional supplements" or "food." As a result of this determination, the court must conclude that FDA does not have jurisdiction over SECOND FORMULA or DAIRY FORMULA. Consequently, plaintiff's motion for summary judgment will be denied with respect to SECOND FORMULA and DAIRY FORMULA. Similarly, because there is a genuine issue of material fact regarding whether SECOND FORMULA and DAIRY FORMULA are drugs or biologics, the defendants' motion for summary judgment with respect to those two products will also be denied.

Having determined that COUNTDOWN, MBA WHEY BLEND, PBA WHEY BLEND, UTERINE C.A.R.E. and FIRST FORMULA are drugs under 21 U.S.C. § 321(g)(1)(C), and thus that FDA may regulate those products, the court must next consider the consequences which follow upon FDA regulation of those products.

**B.** *Consequences of FDA Regulation*

Plaintiff maintains that the five Impro products which the court has determined are drugs are also "new animal drugs" under FDCA. Plaintiff contends that FDCA requires a manufacturer of new animal drugs to file a "New Animal Drug Application." Plaintiff further contends that defendants have not filed such an application for the five Impro products and thus the products are "adulterated" under FDCA and plaintiff is entitled to an injunction prohibiting defendants from introducing the five Impro products into interstate commerce. The court will address each of these allegations in turn.

The first issue is whether the five Impro products are new animal drugs. 21 U.S.C. § 321(w) provides in pertinent part:

The term "new animal drug" means any drug intended for use for animals other

---

**5.** Plaintiff contends that if it can prove that SECOND FORMULA and DAIRY FORMULA were intended to be used in the manner contemplated by 21 U.S.C. § 321(g)(1)(B) and 9 C.F.R. § 101.2(w), then FDA would have jurisdiction over those two products. Plaintiff bases this argument on a memorandum of understanding between FDA and USDA appearing at 47 Fed. Reg. 28458 (1982). That agreement states in pertinent part that when animal biologics:

> ... are not produced in an establishment licensed under VSTA but are nevertheless shipped interstate, shippers of such products are subject to sanctions under VSTA. Because animal biological products are "drugs" within the meaning of FDCA, FDA may regulate such products when VSTA does not apply or, as in the case of unlicensed biologicals in interstate commerce, if VSTA does not offer an appropriate remedy-at-law.

*Id.* at 26459.

Defendants respond that the memorandum of understanding is ineffective as a grant of jurisdiction over the Impro products at issue in this case because it violates the clear language of FDCA and Eighth Circuit case law interpreting that statute. Defendants are correct. 21 U.S.C. § 392(b) indicates that FDCA does not affect, modify, repeal or supersede VSTA. Moreover, in *Grand Laboratories, Inc. v. Harris,* 660 F.2d 1288, 1292 (8th Cir.1981), *cert. denied, Grand Laboratories, Inc. v. Schweiker,* 456 U.S. 927, 102 S.Ct. 1972, 72 L.Ed.2d 442 (1982), the Eighth Circuit construed 21 U.S.C. § 392(b) to mean that Congress intended "to leave the regulation of animal biologics shipped across state lines in the Department of Agriculture, where it had been since 1913." Congress has established a jurisdictional regulatory framework in VSTA and FDCA. That framework cannot be altered by agency action such as the memorandum of understanding on which plaintiff would rely.

than man, including any drug intended for use in animal feed but not including such animal feed,—

(1) The composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of animal drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof.

*Id.* Unless an animal drug is generally recognized among qualified experts as safe and effective for its intended uses and has been used to a material extent for a material time, the drug is a new animal drug and subject to FDA premarketing clearance. *United States v. Undetermined Quantities of the Various Articles of Drug (Equidantin)*, 675 F.2d 994, 999–1000 (8th Cir. 1982), *cert denied sub nom Performance Products, Inc. v. United States*, 460 U.S. 1051, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983). As the Eighth Circuit has stated:

Either a genuine dispute concerning the safety and effectiveness of a drug product or unawareness of the drug product among qualified experts precludes a finding of "general recognition" for purposes of ... 21 U.S.C. § 321(w).... Thus, "general recognition" among experts must be based upon " 'adequate and well-controlled investigations,' " as well as publication in scientific literature. "Anecdotal evidence," i.e., testimony of physicians unsupported by controlled investigation or scientific publication, does not constitute "substantial evidence." The mere fact that a drug product has been marketed for an extended period does not preclude a finding of "new drug" status.

*Id.* at 1000 (citations omitted).

■ There are various formulations of what is required for a new animal drug to

be "generally recognized". *See, e.g., United States v. Seven Cardboard Cases*, 716 F.Supp. 1221, 1223–24 (E.D.Mo.1989); *United States v. 118/100 Tablet Bottles*, 662 F.Supp. 511, 513–14 (W.D.La.1987). Regardless of the formulation, however, it is clear that in the Eighth Circuit "general recognition" requires, at a minimum, publication in scientific literature of well-controlled investigations. In the present case, defendants contend that well-controlled investigations have been conducted on the five Impro products, but concede that these investigations have never been published in scientific literature. Consequently, the five Impro products at issue here are not generally recognized as safe and effective and thus are new animal drugs under 21 U.S.C. § 321(w).[6]

■ The next issue is whether the five Impro products are "adulterated" new animal drugs. 21 U.S.C. § 360b requires the filing of a new animal drug application for new animal drugs. 21 U.S.C. § 360b(a)(1) provides that unless such an application is filed, new animal drugs shall be "deemed unsafe for the purposes of § 351(a)(5)." 21 U.S.C. § 351(a)(5) provides that "a drug or device shall be deemed to be adulterated— if it is a new animal drug which is unsafe within the meaning of § 360b of this title."

It is uncontested that a new animal drug application has never been filed with respect to any of the five Impro products at issue here. Consequently, these products are "unsafe" and are thus "adulterated" within the meaning of 21 U.S.C. § 351(a)(5). The five Impro products are "adulterated new animal drugs."

Next, the court must determine whether the defendants have violated 21 U.S.C. § 331(a). That section provides:

The following acts and the causing thereof are prohibited:

---

**6.** The court notes that its conclusion that the five Impro products are "drugs" and "new animal drugs" is consistent with the liberal construction FDCA is to be given. *See United States v. An Article of Drug (Backto–Unidisk)*, 394 U.S. 784, 798, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726 (1969). In *Backto–Unidisk,* the United States

Supreme Court stated "we are ... convinced that we must give effect to congressional intent in view of the well-accepted principle that remedial legislation such as the Food, Drug, and Cosmetic Act is to be given a liberal construction consistent with the Act's overriding purpose to protect the public health." *Id.*

(a) the introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded.

*Id.* It is undisputed that defendants delivered through interstate commerce the five Impro products. Because the five Impro products are adulterated new animal drugs, defendants have violated 21 U.S.C. § 331(a).

The final issue the court must address is whether an injunction is a proper remedy for a violation of 21 U.S.C. § 331(a). 21 U.S.C. § 332(a) provides in pertinent part:

The district courts of the United States and the United States courts of the Territories shall have jurisdiction, for cause shown, and subject to the provisions of § 381 (relating to notice to opposite party) of Title 28, to restrain violations of § 331 of this title.

*Id.* The United States Supreme Court has indicated that where Congress has provided for statutory injunctions to protect the public interest, an equity court has powers broader and more flexible than in a case between private litigants. *Mitchell v. Robert D. Mario Jewelry, Inc.*, 361 U.S. 288, 291, 80 S.Ct. 332, 334, 4 L.Ed.2d 323 (1960). As the Fourth Circuit has held

Where the plaintiff is a sovereign and where the activity may endanger the public health, "injunctive relief is proper, without resort to balancing." *Illinois v. Milwaukee*, 599 F.2d 151, 166 (7th Cir. 1979), *rev'd on other grounds*, 451 U.S. 304 [101 S.Ct. 1784, 68 L.Ed.2d 114] (1981). Second, in cases of public health legislation, the emphasis shifts from irreparable injury to concern for the general public interest.... "The United States, however, is not bound to conform with the requirements of private litigation when it seeks the aid of the courts to give effect to the policy of Congress as manifested in a statute. It is a familiar doctrine that an injunction is an appropriate means for the enforcement of an act of Congress when it is in the public interest." *Shafer v. United States*, 229 F.2d 124, 128 (4th Cir.1956).

*Environmental Defense Fund v. Lamphier*, 714 F.2d 331, 337–38 (4th Cir.1983). As the plaintiff correctly indicates, when a federal statute authorizes courts to enjoin violations of that statute, the government need show only that: (1) the statute applies to defendants; and (2) there exists some cognizable danger of recurrent violations. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

As the foregoing analysis indicates, FDCA applies to defendants through their distribution of the five Impro products. Moreover, there exists more than some cognizable danger of recurrent violations because defendants have displayed no intention to cease their distribution of the five Impro products absent a court order directing them to do so. Consequently, because defendants have violated 21 U.S.C. § 331(a), the court will exercise its power under 21 U.S.C. § 332(a) to restrain defendants' violation of FDCA. The court will accomplish this goal by enjoining defendant from introducing or delivering for introduction into interstate commerce any of the five Impro products.

## CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants Pro–Ag, Inc. and Spencer W. Landswerk's motion for summary judgment is denied;

2. Plaintiff United States of America's motion for summary judgment is granted with respect to IMPRO COUNTDOWN, IMPRO MBA WHEY BLEND, IMPRO PBA WHEY BLEND, IMPRO UTERINE C.A.R.E. and IMPRO FIRST FORMULA. Pursuant to this court's authority under 21 U.S.C. § 332(a), defendants Pro–Ag, Inc. and Spencer W. Landswerk are hereby enjoined from introducing or delivering for introduction into interstate commerce any of those five Impro products;

3. Plaintiff United States of America's motion for summary judgment with respect to IMPRO SECOND FORMULA and IMPRO DAIRY FORMULA is denied;

4. Defendants Pro–Ag, Inc. and Spencer W. Landswerk's motion for attorneys' fees pursuant to 28 U.S.C. § 2412 is denied.

## ON MOTION FOR RECONSIDERATION

This matter is before the court on the parties' cross-motions for reconsideration of this court's order dated April 24, 1991. In that order the court granted plaintiff's motion for summary judgment with respect to five Impro Products and denied plaintiff's motion for summary judgment with respect to IMPRO SECOND FORMULA and IMPRO DAIRY FORMULA. Plaintiff now moves for reconsideration and summary judgment with respect to IMPRO SECOND FORMULA and IMPRO DAIRY FORMULA. Defendants move the court for reconsideration of its entire order dated April 24, 1991.[1]

In its motion for reconsideration, plaintiff requests the court to reconsider its decision relating to IMPRO SECOND FORMULA and IMPRO DAIRY FORMULA. In its order dated April 24, 1991, the court indicated that it was "tempted to hold that SECOND FORMULA and DAIRY FORMULA are drugs based on the representations made in the supplemental memorandum of defendants dated April 19, 1991." (Order of April 24, 1991, at 17 n. 4). The court declined to hold that IMPRO SECOND FORMULA and IMPRO DAIRY FORMULA were drugs under 21 U.S.C. § 321(g)(1)(C), however, because there was some uncertainty about the applicability of defendants' representations to the two products at issue. *Id.* In its motion for reconsideration, plaintiff has come forward with information which resolves the uncertainty the court expressed in its April 24, 1991, order. Specifically, plaintiff has directed the court's attention to the deposition of Spencer W. Landswerk taken on October 26, 1990. The court has reviewed various portions of Mr. Landswerk's deposition which were previously provided to the court, focusing on pages 92, 93 and 95. In his deposition, Mr. Landswerk unequivocally stated that IMPRO SECOND FORMULA and IMPRO DAIRY FORMULA are to be used for increased milk production. Moreover, plaintiff has redirected the court's attention to the marketing brochure titled "PRO–AG, INC., TOTAL PRODUCTION CONCEPT–BEEF" in which IMPRO DAIRY FORMULA is promoted as "an aid to increase milk production."

When footnote 4 of this court's order dated April 24, 1991, is read in conjunction with the factual material highlighted in plaintiff's motion for reconsideration, the court can no longer resist the conclusion that IMPRO SECOND FORMULA and IMPRO DAIRY FORMULA are drugs as that term is defined in 21 U.S.C. § 321(g)(1)(C). The court has also reviewed defendants' letter dated May 17, 1991, and, treating it as a motion for reconsideration, notes that defendants have failed to produce any new facts or law which compel the court to disturb its ruling of April 24, 1991, as it relates to the five other Impro Products.

Accordingly, based on a review of the file, record and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendants Pro–Ag, Inc. and Spencer W. Landswerk's motion for reconsideration is denied; and

2. Plaintiff United States of America's motion for reconsideration and summary judgment with respect to IMPRO SECOND FORMULA and IMPRO DAIRY FORMULA is granted. Pursuant to this court's authority under 21 U.S.C. § 332(a), defendants Pro–Ag, Inc. and Spencer W. Landswerk are hereby enjoined from introducing or delivering for introduction into interstate commerce IMPRO SECOND FORMULA and IMPRO DAIRY FORMULA.

---

1. In a letter to the court dated May 17, 1991, defendants' attorney requested that the court "not only deny the Plaintiff's Motion for Reconsideration, but reconsider the entire decision of April 21." Although defendants have not filed a formal motion for reconsideration in this matter, the court will treat defendants' counsels letter dated May 17, 1991, as such.