50 F.3d 497
 UNITED STATES of America, Plaintiff-Appellant/Cross-Appellee,
v.
ARTICLES OF DRUG FOR VETERINARY USE, Identified in
Attachment A which are in the Possession of
Immuno-Dynamics, Inc., Highway 141/169,
Perry, Iowa,
Defendants-
Appellees/Cross-
Appellants.
 Nos. 94-1270, 94-1314.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 13, 1994.
Decided March 13, 1995.
Rehearing Denied May 19, 1995,
 
 Deborah Kent, Washington, DC, argued (Frank W. Hunger, Don Carlos Nickerson, Douglas N. Letter, Margaret Jane Porter, Steven A. Johnson and Deborah Ruth Kent, on the brief), for appellant/cross-appellee.
 David L. Charles, Des Moines, IA, argued (David L. Charles and S.P. DeVolder, Des Moines, IA, and Ralph R. Brown, Dallas Center, IA, on the brief), for appellee/cross-appellant.
 Before WOLLMAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and HANSEN, Circuit Judge.
 HANSEN, Circuit Judge.
 
 
 1
 The United States appeals the judgment entered on a jury verdict rendered in favor of the defendant, Immuno-Dynamics, Inc. (Immuno-Dynamics), in the United States' attempt to condemn six products manufactured by Immuno-Dynamics as unsafe and adulterated new animal drugs under the Federal Food, Drug, and Cosmetic Act (FDCA). See 21 U.S.C.A. Secs. 301-395 (1972 & West Supp.1994). The United States contends that the district court[1] erred by not granting its motion for judgment as a matter of law or alternatively, that the jury verdict is not supported by the evidence. We affirm.
 
 I.
 
 2
 This action began when the United States filed a complaint for forfeiture of six products manufactured by Immuno-Dynamics at its Perry, Iowa, plant, contending that the products were "adulterated" "new animal drugs."[2] The United States seized the six products, as well as some written literature found at the plant. The seized products had not been approved by the United States Food and Drug Administration (FDA). Immuno-Dynamics protested the need for such approval, contending that these products are mere nutritional supplements or food and not drugs subject to FDCA regulation.
 
 
 3
 The six products seized (Bio-Stim Calf Boluses, Bio-Stim Cattle Boluses, Feed Supplement, ID-Vita Pak, VP-127, and VeGa-1) are made from dried colostrum with an added preservative. Colostrum, the first milk produced by a mammal after giving birth, is generally recognized for its high content of protein and antibodies that supply essential immunities to the newborn.[3] To manufacture the seized products, Immuno-Dynamics collects colostrum from dairy cows, sanitizes it, adds a preservative to prevent spoilage, formulates the colostrum into a cheese, extracts the whey (the watery part of milk that is separated from the curd in making cheese), and defats it through a drying process. Immuno-Dynamics then markets the colostral whey in both a powdered and a liquid form. Of the six products seized, some are powder and some are liquid; all must be mixed with either feed or water and orally ingested by young calves or cattle.
 
 
 4
 At trial, the United States contended that the products were adulterated new animal drugs in violation of the FDCA. Immuno-Dynamics argued that the seized products were not intended for drug uses and therefore were not adulterated new animal drugs under the FDCA. Rather, Immuno-Dynamics argued that the seized products were merely food or at most "animal biologics," which it contended are solely within the regulatory jurisdiction of the United States Department of Agriculture under the Virus, Serum, and Toxin Act of 1913 (VSTA), 21 U.S.C.A. Secs. 151-58; and are not subject to seizure under the FDCA. Both parties sought judgment as a matter of law, but the district court submitted the case to the jury.
 
 
 5
 The district court instructed the jury solely on the United States' FDCA claim and did not instruct on Immuno-Dynamics' VSTA jurisdictional issue. By special verdict form, the jury found that none of the six products was an "adulterated new animal drug," and accordingly, the district court entered judgment in favor of Immuno-Dynamics.
 
 
 6
 The United States appeals, contending that the six products at issue are adulterated new animal drugs within the meaning of the FDCA as a matter of law and that the case should not have been submitted to the jury or, alternatively, that no reasonable juror could have found that the six products were not new animal drugs in light of the uncontroverted evidence. The United States also contends that the six products are not generally recognized as safe and effective by qualified scientific experts. Immuno-Dynamics cross-appeals on the district court's failure to instruct on the VSTA animal biologics issue.
 
 II.
 
 7
 The dispositive issue in our view is whether or not the district court properly submitted this case to the jury. In a new drug condemnation proceeding, either party may demand a jury trial on an issue of fact. 21 U.S.C.A. Sec. 334(b). Immuno-Dynamics presented evidence at trial indicating that the products seized were not intended to be used as drugs within the meaning of the FDCA, that the written literature seized at the plant was not actually distributed in the country to promote the six products seized, that colostrum is generally recognized as safe, and that controlled field testing performed on these products indicated the same. We must determine whether this evidence raised an issue of fact for a jury or a question of law for the court.
 
 
 8
 The FDCA broadly defines "drug" as any product "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" and any product "(other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C.A. Sec. 321(g)(1)(B) and (C). This statutory definition indicates that "whether a product is a drug depends on its intended application." United States v. Pro-Ag, Inc., 796 F.Supp. 1219, 1224 (D.Minn.1991), aff'd, 968 F.2d 681 (8th Cir.1992). "The vendor's intent is the key element in this statutory definition." United States v. Storage Spaces Designated Nos. 8 & 49, 777 F.2d 1363, 1366 (9th Cir.1985), cert. denied sub nom., Nescco, Inc. v. United States, 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 148 (1987).
 
 
 9
 The vendor's intended application for a product may be derived from any relevant source, including product labels and any promotional materials accompanying the product. Id. at 1366; Pro-Ag, 796 F.Supp. at 1224. The FDCA defines "labeling" as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C.A. Sec. 321(m). Physical attachment of promotional literature to the product is unnecessary. Kordel v. United States, 335 U.S. 345, 357, 69 S.Ct. 106, 113, 93 L.Ed. 52 (1948). Promotional materials are relevant to intent so long as they are currently being distributed with the product, and if not, there must be evidence that customers are still relying on the representations made in promotional materials distributed in the past. Pro-Ag, 796 F.Supp. at 1225.
 
 
 10
 The dispute in this case centers around claims made in written literature seized at the plant but not affixed to the products seized. The United States seized written literature consisting of a brochure, two University and Field Trial Results booklets, a pamphlet, and an advertisement. This literature described colostrum-based products in general and made various claims about the seized products, including that they increase the chance of survival in young animals, improve circulatory flow, increase circulatory cell volume, regulate the body defense system, improve the quality of blood flow, lessen the severity of scours and pneumonia, and act as a digestive stimulant to improve appetite after stress. There is little doubt that these claims, if used in promotional material, can be said to indicate an intent to "affect the structure or any function of the body of" animals within the FDCA's broad definition of "drug." 21 U.S.C.A. Sec. 321(g)(1)(C). The United States argues that drawing a conclusion about the vendor's intent based upon the uncontroverted statements in the written materials was purely a question of law that should not have been submitted to the jury. In this case, however, Immuno-Dynamics raised genuine factual disputes about whether these written materials were "promotional" and whether they were "accompanying" the products seized within the meaning of the Act. 21 U.S.C.A. Sec. 321(m)(2).
 
 
 11
 Immuno-Dynamics offered evidence to the effect that the written materials were not used to promote the products seized but were printed for other purposes. Immuno-Dynamics claimed that one pamphlet had been distributed only to overseas customers; that the university studies merely summarized the results of field trial studies and were not used for promotional purposes; and that it ceased distributing another pamphlet after the FDA voiced some concerns about its content. No customers testified that they purchased the seized products on the basis of a promoted drug purpose, and no product users testified that they relied on any present or prior representations when purchasing the products seized. Thus, the record demonstrates that factual disputes existed that were properly submitted to a jury.
 
 
 12
 The United States argues that in United States v. Pro-Ag, Inc., 968 F.2d 681, 683 (8th Cir.1992), and in United States v. 353 Cases * * * Mountain Valley Mineral Water, 247 F.2d 473, 480 (8th Cir.1957), we considered the labeling issue to be a question of law. Those decisions are readily distinguishable from the case at hand. In both of those cases, the fact that the written materials in issue were distributed as promotional materials was undisputed. In Pro-Ag, the district court considered only the promotional literature that was currently being distributed, and there was no dispute that these materials were promotional and were being distributed in relation to the seized products. 796 F.Supp. at 1225. The only issue was whether the undisputed promotional materials required a conclusion that the products were intended for a drug purpose--a conclusion of law to be drawn from undisputed facts. Id. at 1225-29. See United States v. Kasz Enter., Inc., 855 F.Supp. 534, 538 (D.R.I.1994) (where "there is no dispute concerning the wording and description of the labeling and other promotional materials or activities that relate to the products" the conclusion to be drawn is a question of law). Thus, our decision in Pro-Ag (that the whey-based products there were drugs within the meaning of the FDCA) was based upon an undisputed record that the materials were promotional. Pro-Ag, 968 F.2d at 683.
 
 
 13
 Similarly, in Mountain Valley Mineral Water, the materials were all printed for use in promoting the product because they were approved advertising material found at a local distributor and available on request; thus, they were obviously useful for no other purpose. 247 F.2d at 478. The only contrary argument was that four of those pamphlets were not actually used by the distributor in Memphis (the product was distributed throughout the United States) in connection with selling the water, but this was not enough to create a material question of fact. Id.
 
 
 14
 Such is not the case here. To the contrary, the record in this case establishes a material factual dispute about whether the written materials found at the plant were promotional in nature, whether they were ever distributed in relation to the six products seized, and if distributed only in the past whether any customers were still relying on the past representations as relating to the six products seized. Thus, whether the written materials evidenced the vendor's intent that the products be used for drug purposes was properly a question of fact in this case and was properly submitted to the jury.
 
 
 15
 Even if the product labeling or written literature evidenced some intended drug purpose, a product is not a new animal drug within the meaning of the FDCA if its composition is such that it is generally recognized among experts as safe and effective for use as suggested in the product's label or if, as a result of investigations to determine its safety and effectiveness, it has become recognized as safe and effective for the recommended use. 21 U.S.C.A. Sec. 321(v) (West Supp.1994). An "unawareness of the drug product by experts generally or a genuine dispute among qualified experts regarding a drug product's safety and effectiveness preclude[s] its qualifying for exclusion as 'generally recognized.' " Premo Pharm. Lab., Inc. v. United States, 629 F.2d 795, 803 (2d Cir.1980). A finding that a product is "generally recognized" by experts as safe and effective for its intended use must be supported by substantial evidence as defined in 21 U.S.C.A. Sec. 355(d) (for new drugs) or 360b(d)(3) (for new animal drugs). See Weinberger v. Hynson, Westcott & Dunning, Inc., 412 U.S. 609, 632, 93 S.Ct. 2469, 2484, 37 L.Ed.2d 207 (1973); Premo, 629 F.2d at 803. Section 360b(d)(3) defines "substantial evidence" as "evidence consisting of adequate and well-controlled investigations, including field investigation, by experts qualified by scientific training and experience" from which it could "fairly and reasonably be concluded by such experts that the drug will have the effect it purports or is represented to have...." Published scientific literature is indicative of whether the drug product is generally recognized as safe and effective among experts. See generally, Tri-Bio Lab., Inc. v. United States, 836 F.2d 135, 142 (3d Cir.1987), cert. denied, 488 U.S. 818, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988); United States v. Undetermined Quantities of Various Articles of Drug, 675 F.2d 994, 1000 (8th Cir.1982), cert. denied sub nom., Performance Prod., Inc. v. United States, 460 U.S. 1051, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983); Premo, 629 F.2d at 804.
 
 
 16
 There was evidence at trial that the seized products consisted solely of dried colostrum and a preservative, and experts testified that colostrum is generally recognized as safe and beneficial to animals. Immuno-Dynamics presented evidence that it has conducted approximately 75-100 controlled field investigations of its products and that numerous published articles exist in scientific literature indicating that colostrum products are safe and effective for use in the animal industry. One government expert testified that there is no general recognition by qualified experts that the actual products seized were effective for their intended use because there is a lack of published studies on these products. We conclude that this evidence created a genuine dispute of fact concerning whether the products were generally recognized as safe and effective for their intended use, and thus, the issue was properly submitted to the jury.
 
 
 17
 "[W]e will reverse a jury's verdict only if 'the evidence is susceptible to no reasonable inferences sustaining it.' " Johnson Intern. Co. v. Jackson Nat. Life Ins. Co., 19 F.3d 431, 435 (8th Cir.1994) (quoting Cashman v. Allied Prods. Corp., 761 F.2d 1250, 1253 (8th Cir.1985)). After reviewing the entire record, we conclude that this case was properly submitted to the jury on questions of fact and that the jury verdict is unassailable because it is supported by reasonable inferences from the evidence presented.
 
 
 18
 Because we conclude that the case was properly submitted to the jury and that the verdict is supported by the evidence, we find it unnecessary to address Immuno-Dynamics' cross appeal.
 
 III.
 
 19
 Accordingly, we affirm the judgment of the district court.
 
 
 
 [1]
 The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa
 
 
 [2]
 A "new animal drug" is "any drug intended for use for animals" or in animal feed, unless it is generally recognized among experts in the field as safe and effective for use as suggested in the product's label. 21 U.S.C.A. Sec. 321(v)(1) (West Supp.1994). Any "new animal drug" that is not approved for use by the United States Food and Drug Administration (FDA) and that is not generally recognized by scientific experts as safe and effective, is deemed unsafe and adulterated under the Act. See 21 U.S.C.A. Secs. 351(a)(5); 360b. The FDCA prohibits shipment of "adulterated" drugs in interstate commerce, and adulterated drugs are subject to forfeiture. See 21 U.S.C.A. Secs. 331(a); 334
 
 
 [3]
 Colostrum is defined in the dictionary as "a specialized secretion of the mammary glands that is produced during the first few days after parturition [birth], that differs from typical milk in its higher content of protein ... and antibodies, vitamins, and minerals and its lower content of sugars and fats, and that supplies essential immune bodies to the young animal and aids in the establishment of the intestinal function." Webster's Third New International Dictionary, at 450 (1986)